## KINGSBURY v. BUCHANAN.

1. OBJECTION TO ADMISSION OF EVIDENCE. An objection to the admission of the evidence of a witness on the ground of interest should be interposed as soon as the interest of the witness is disclosed.

2. INTEREST BALANCED. A witness is not incompetent on the ground of interest, when, as between the plaintiff and defendant, his interest is equally balanced.

3. PLEADINGS: EXHIBITS. In an action of replevin against a sheriff, who claims the possession of the property in controversy under and by virtue of the levies of certain writs of attachment, it is not necessary to set out copies of the writs as exhibits to the answer when they are referred to by recitals showing the dates thereof, the names of the attaching creditors, the amounts claimed by each, the character of the indebtedness, and the returns thereon.

4. OBJECTIONS TO DEFECTS IN PLEADINGS. An objection to pleadings on the ground that they do not set out by proper exhibits the cause of action or defense cannot be taken in the form of an objection to the introduction of evidence.

5. RETURN. In an action of replevin against a sheriff the defendant may justify under a writ not returned to the District Court at the time of the commencement of such action when the time within which he was required to make such return had not then expired.

6. ISSUE IN REPLEVIN. The issue in replevin is as to the right of possession of the property in controversy at the date of the commencement of the action.

7. JUDGMENT IN ATTACHMENT. An order in a judgment in an attachment suit, directing a special execution to issue against the property attached, is not necessary to continue the attachment lien.

8. CONTRACT: ELECTION. Where H. bought personal property with the

proceeds of drafts drawn on W. under a contract in which it is stipulated that the property should be purchased and an account rendered by H. to W., and that W. should have the right to elect to either charge the drafts to H. or take the property, it was held, that an election by W. after the purchase, to take the property did not relate back to the purchase by H. and vest the title in W. from that time.

9. INSTRUCTIONS: CONSTRUCTION OF CONTRACT. Where the evidence showing a contract in parol is conflicting, the court should leave all the questions upon the contract to the jury, to be determined by the weight of the evidence.

10. RETURN AS EVIDENCE. The return of a sheriff upon a writ of attachment is *prima facie* evidence of the facts therein recited.

11. ESTOPPEL. An allegation in the petition in replevin, that the defendant was in possession of the property in controversy, estops the plaintiff from denying the possession of defendant at the time of the commencement of the action.

12. CONTRADICTING AN OFFICER'S RETURN. *Quere,* can the return of an officer be contradicted by parol evidence.

*Appeal from Clinton District Court.*

FRIDAY, DECEMBER 28.

THE plaintiff by her action of replevin seeks to recover from defendant the possession of sixteen hundred and fifty head of hogs, and one hundred and fifty head of cattle, which she claims defendant wrongfully detains from her.

The defendant in his answer denies the allegations of the petition, and pleads in justification, that as the sheriff of Clinton County there was placed in his hands for execution certain writs of attachment; one in favor of Coolbaugh & Brooks, one in favor of Charles H. Toll, and an execution in favor of Doan, King & Co., each against one William G. Haun; and that he levied upon the property in controversy as the property of said Haun, by virtue of said writs.

The plaintiff claims that she was the owner of the hogs by virtue of a purchase from A. M. Waterman and A. M. Waterman & Co.; that Waterman & Co. prior to the sale to her owned them by an original purchase of the same for them by Haun, as their agent; that she owned the cattle by purchase from the said Waterman & Co. who were authorized

to sell the same to her; which claim to said property the plaintiff represents that Haun recognized by giving to her receipts for said hogs and cattle; that such sale and receipts gave to her a title to said property and the right to the possession thereof.

It is claimed by defendant that Haun owned the hogs; that they were purchased by him as his own property and not as the property of Waterman & Co.; and that if he ever sold them to Waterman & Co., such sale was invalid as against his creditors; that the cattle were raised and purchased by Haun, and that there never was any such sale or transfer of the possession to Waterman or to plaintiff as would be valid as against the creditors of Haun.

It is claimed by the plaintiff that the contract between Waterman and Haun was, that the title to the hogs when purchased should be in Waterman; that Waterman & Co. should furnish Haun with credit, and that when the hogs were purchased they had a right to elect to make Haun take them and charge him with the drafts drawn in payment of the purchase.

The defendant claims that the understanding was that Haun should buy the hogs at his own risk and upon his own account, and that after they were puchased Waterman & Co. might elect to take the hogs, and allow Haun credit therefor, with the cost of feeding the same, or to keep the bills charged to him. Under the issue thus presented there was a trial by jury, and a verdict for the defendant.

The court refused to give each of the instructions asked both by the plaintiff and defendant, but upon its own motion gave certain instructions, to which, as well as its rulings upon other questions raised during the trial, the plaintiff excepted, and appeals.

*Grant* and *Leffingwell* for the appellant.

*Cotton, Lindley* and *Flint & Hart* for the appellee.

BALDWIN, J.—I. The objection of plaintiff to the testimo-

ny of Haun was properly overruled, not only for the reason that it was made too late, but for the further reason that his interest, if any, was equally balanced. Haun was introduced by defendant after his relative position was fully known to the plaintiff, both by the pleadings and by the•evidence of Waterman given before Haun was called upon the stand. A party is not prevented from *taking an objection* to the testimony of a witness at any time during the trial, provided it is made as soon as the interest is discovered. 1 Greenl. Ev. section 421. In this section Mr. Greenleaf says: "A party has his election to admit an interested person to testify against him or not; but in this, as in all other cases, the election must be made as soon as the opportunity to make it is presented, and failing to make it at that time he is presumed to have waived it forever." The objection of the plaintiff to the admissibility of Haun's evidence was based upon the fact that "he was the defendant in the executions under which the defendant justified." The fact was certainly known to plaintiff when Haun was first called on the stand, and the plaintiff with this knowledge, having failed to make the objection at that time, was presumed to have waived it forever.

But we hold that Haun's interest in the result of the suit was equally balanced. If the plaintiff had a right to recover such right must be based upon the validity of the sale of the cattle by Haun to Waterman, and of Waterman's title to the hogs by virtue of the original purchase. If the sale was valid, then Haun was entitled to a credit by Waterman & Co. for the value of the cattle, and the price paid for the hogs, and also the cost of keeping and feeding the same. Should the defendant succeed, the cattle and hogs would be applied to the payment of the attaching creditors claims. *Adams* v. *Foley*, 4 Iowa 47; *Cutter* v. *Fanning*, 2 Ib. 580; 1 Greenl. Ev. sections 391–399 and 420; *Wisner* v. *Brady, ante.*

II. The objection to the introduction of the writs of attachment in favor of Haun's attaching creditors in evidence

was correctly overruled. Copies of the attachments and the returns thereon were not appended to the defendant's answer, and for this reason it is claimed by plaintiff that the defendant could not introduce the original writs in evidence. The attachments were served on the 15th day of Sept., 1857, and the property replevied from the sheriff upon the 24th day of the same month. In defendant's answer full reference is made to the process under which he holds the property, the date of the writ, in whose favor, the amount claimed by the attaching creditors, the character of the indebtedness, and also to the return thereon. We think that under our practice it was not required of defendant to set out more fully the process under which he justified. And even if copies were required, that such objection could not be made to the sufficiency of the pleadings upon the introduction of the evidence; this being a question that should have been presented by motion for a more specific answer. Code section 1734.

It is further submitted by plaintiff that the writs did not show a return thereon, and for this reason they should have been excluded. The sheriff is not required to make a return of his proceedings before the return day of the writ. It is sufficient if he complies with the mandates of the writ. These writs were not returnable until the November Term, and after the proceeding by replevin was commenced. But if a return is necessary then these writs show that such return was made. A return is a short account in writing, made by the sheriff, of the manner in which he has executed his writ. Bouv. Law Dic. Each of these writs has an indorsement upon it of the time and manner of the service, and a description of the property attached. We are unable to perceive any good reason for holding that an officer can justify any better under a writ returned and filed in the office from which it issued than if in his own possession.

It is further submitted that the judgments subsequently rendered in favor of the attaching creditors do not show any

order for special executions against the property attached, and that the copies thereof offered by defendant, for this reason, should have been excluded from the jury. This objection is not sustained by the record in the case of *Coolbaugh & Brooks* v. *Haun*, as there is a special order that the property attached be sold, &c. We understand that by an agreement the case of *Doan, King & Co.* was amicably adjusted, and we therefore will not refer to the record of that case. In the case of *Toll* v. *Haun et al*, there is a judgment by consent of parties, and no order directing the property attached to be subjected to the lien of the judgment. Had Toll even failed to recover final judgment, we doubt whether this would in any manner have affected the right of the sheriff to the possession of the property under the attachment. The question is, who was entitled to the possession of the property upon the day it was replevied, not when final judgment was rendered. If the sheriff held the property by virtue of writs properly issued, and the property was Haun's, the right to the possession must be determined as of the date of the levy, and the plaintiff must rely upon the sufficiency of her own title and right to the possession when she brought her action. But the court in its judgment need not direct that a special execution issue in order to continue the lien upon the property attached. The execution issues as a matter of right to the party recovering the judgment, and the lien is not lost if special execution is not ordered. *Corriell* v. *Doolittle*, 2 G. Greene, 385.

III. Did the court err in refusing the instructions asked by the plaintiff? In order more fully to consider the applicability of the instructions refused and given, it becomes important to refer to the evidence introduced upon the trial. Waterman, the vendor of plaintiff, testified that having large demands against Haun, he purchased of him one hundred and fifty head of cattle, as they were running at large near his residence at Elk River; that Haun gave to him what was called a warehouse receipt for the one hundred and fifty head of

cattle; that in the summer of 1857 he employed Haun to purchase sixteen hundred and fifty head of hogs and take them to his distillery at Elk River, and feed them, at two cents per head per day; that Waterman authorized Haun to draw drafts on him for the hogs, which drafts he paid, or paid others to an equal amount which Haun requested him to pay in the place of those drawn for the hogs; that the hogs were bought for him, taken to Elk River for him, and were fed by Haun for him up to the date of the sale to plaintiff; that on the 9th of September, 1857 Waterman sold the cattle and hogs to plaintiff, who sent an agent to Elk River where Haun resided, and that said agent took nominal possession of the cattle and hogs; that the original receipts were indorsed by Waterman & Co., and given up to Haun, and new receipts given by Haun to plaintiff.

The defendants introduced on their part the evidence of the said Haun who testified that in June, 1857, he went to St. Louis to raise money to buy hogs to eat the slops at his mill and distillery; that he went to Waterman to get the money; that Waterman refused to furnish him with money; Haun said to Waterman that he knew he had bought hogs to be fed at another distillery and proposed to him to buy hogs on Waterman's account, and feed them for him at two cents per head per day; Waterman said he had not the time or the money to buy the hogs. Haun then proposed to Waterman that he would do the purchasing of the hogs and take them to his place, provided Waterman would allow him to draw on him, Waterman, for money enough to buy the hogs to eat the slops; and after the purchase of the hogs was made and the expenses were all paid and the accounts rendered, he, Waterman, might then elect to take the hogs, or to charge the bills to Haun, and let him keep the hogs; to which Waterman agreed. If the hogs were purchased at such prices that he, Waterman, did not like the purchase, after a full account rendered, he had the right to say that Haun should keep the hogs on his own account and Waterman keep the bills charg-

ed to him, or take the hogs and pay the costs and expenses. Waterman assented to this proposition and gave Haun a letter of·credit for $16,000.

Haun bought the hogs in Illinois, and got them home in two separate lots. , They were bought in his name, and the barges in which they were shipped were hired in his name, and charged to him; and up to the᷍time the last lot was driven home, he, Haun, could not say whether they were his hogs or Waterman's. Some time before the 14th of August Haun knew that Waterman elected to take the hogs, and the expenses and hogs were of that date charged by him to Waterman & Co. Up to that time he did not know whose hogs they were.

One Neafie testified that in a casual conversation in a stage coach with Waterman, he, Waterman, stated he had made large advances of money to Haun and to save himself he was compelled to take a lot of hogs in payment of the money due him by Haun.

Upon this state of facts the plaintiff asked the court to instruct the jury, in substance, that if they could find from the evidence that the hogs in controversy were bought by Haun with the proceeds of drafts drawn on Waterman under a contract whereby the hogs were to belong to Waterman, unless he was dissatisfied with the price and chose to compel Haun to take the hogs and pay the drafts, and that Waterman never elected to make Haun take the hogs and pay the drafts, and the plaintiff was a purchaser from Waterman, that she was entitled to recover, though Haun was in the actual possession of the hogs when the attachments in the hands of defendant were levied.

The third instruction is in substance the same as the first, except that in this the court is asked to *instruct* that if Waterman & Co. elected to take the hogs, after the purchase by Haun, that the title of Waterman then related back to the original purchase by Haun.

The sixth instruction also relates to the title of plaintiff

to the hogs and asks a construction of the contract under the evidence.

The contract between Waterman & Co. and Haun being in parol, the plaintiff endeavored to establish her construction thereof by the testimony of Waterman—the defendant his, by the evidence of Haun.

The court very properly submitted the questions based upon this testimony to the consideration of the jury. The jury were directed by the court to find for the plaintiff, if they were satisfied from the evidence that the hogs were purchased by Haun with the understanding that the title was to be in Waterman & Co. and not in Haun; or if purchased by Haun as the agent of Waterman & Co. and with their money.

The instructions asked by the plaintiff with reference to the title in the hogs relating back to the date of the original purchase, after Waterman's election to take the hogs, was properly refused. The title from the time of such purchase was in some one, either in Haun or Waterman & Co. If at any time, it was in Haun, Waterman & Co. could not by their election alone change the title from Haun to them, to the prejudice of Haun's creditors.

It is claimed by the counsel for the appellant that the court in its instructions, relating to the contract between Waterman and Haun, mixed up the law of the case with the credibility of the witnesses, assuming conflict in the evidence when none existed. The objections of appellant to the instructions of the court, and the arguments of counsel in favor of a reversal, appear to be based upon the position that Waterman's testimony stands uncontradicted, and that his statement of the contract, between himself and Haun, was in every respect true. If this position was correct, then it would have been proper for the court to have placed such a construction upon the contract as is claimed by plaintiff in the instructions asked. But there is a conflict in the testimony of Haun and Waterman in relation to the contract.

Waterman testified that the hogs were purchased originally as his, by Haun and others as his agents; that the title to the hogs was to be in him from the time they were purchased. Haun testified that he bought the hogs in his own name; that there was no understanding between himself and Waterman, as to how the account was to be kept or in whose name the title should be, but that if Waterman & Co., after the hogs had been purchased and the accounts rendered should elect to take the hogs, they had the right so to do. Waterman says nothing about this portion of the contract giving them the right to elect, &c. There are other points upon which they do not agree.

The testimony of Neafie may have given some strength to the position assumed by defendant, that the title was at one time in Haun and was so considered by Waterman. Under this conflict of evidence we think the court could not properly place the construction upon the contract as claimed by either plaintiff or defendant, but left it with the jury to determine according to the weight of evidence.

IV. We are unable to perceive the errors complained of in the instructions of the court relative to the right of plaintiff to the possession of the cattle. It is conceded by plaintiff that if the cattle were not taken from the possession of Haun after the sale to Waterman and Co., and that defendant had no notice of such sale as is claimed to have been made, that the cattle were subject to an attachment as the property of Haun. The court very fully and clearly instructed the jury in relation to the rights of the parties under a sale of personal property, when there is no change in the possession of the same; and left it with them to say whether, under the evidence, there ever had been such a transfer of the cattle as would prevent the defendant from holding them by virtue of the attachment.

V. It is next assigned that the court erred in refusing and in giving certain instructions relative to the sufficiency of the levy of the attachment, by defendant upon the cattle

and hogs. The plaintiff asked the court to instruct the jury that should they believe from the evidence, that Buchanan in executing his writs of attachment did not dispossess Haun of the hogs and cattle; that if when he undertook to levy his writs he left the property in Haun's possession, just as it was before, it was not a valid attachment and plaintiff was entitled to recover.

The court was also asked to instruct the jury, that when an officer levies an attachment he must take the property from the debtor; and if he leaves it in his actual possession, he is not, in such a case, authorized to detain the property under the writs under which he justifies.

The court upon this point instructed the jury that it was not necessary to a valid levy that the officer should actually touch and handle the property; that he need not count the hogs or cattle if he could otherwise ascertain the number; that if in this case the defendant actually saw the property he returns upon the writs that he attached and levied upon; and declared that he attached and levied upon the same, and notified the attachment defendant thereof, and put the same under the control of one Sanford Haun, to hold the property for him, the said Sheriff; and if by himself or the said Sanford he had such a control over the property that it could not be well taken from him by the said Wm. G. Haun, or an officer with another writ, without their knowing it, this was a sufficient attachment.

The court further instructed the jury that *it would not be a sufficient levy* if the officer left the property in the possession and custody of the attachment defendant.

The defendant in his return upon the writs of attachment, offered in evidence upon the trial of this cause, states that he served the same by attaching the hogs and cattle as the property of Wm. G. Haun, giving the number of each and the place where found.

The plaintiff claims that there was no valid attachment, for the reason that there was no change in the possession of

either the cattle or hogs, as shown by the testimony of one Sanford Haun.

The return of the sheriff being the act of a sworn officer, is of itself *prima facie* evidence of the facts therein stated.   An attachment is the taking hold of the goods of another, for the purpose of satisfying a debt.   The officer certifies that he took hold, or possession, of this property of Wm. G. Haun, &c.   Here again is a conflict of evidence— the return of the officer on one side, and the testimony of Sanford Haun on the other—which the court, without prejudice to the rights of the plaintiff, submits to the consideration of the jury.   We are of opinion however that the plaintiff having alleged that the defendant was in the possession of this property and detained the same from her, she is now estopped from saying that the defendant was not in the possession of the same when she brought her action.

We also doubt whether the return of an officer can be contradicted by parol testimony.   If false, the party injured thereby has the right to proceed upon the official bond.

VI.   Did the court err in refusing to sustain the motion of plaintiff for a new trial?   We have more hesitation in affirming the ruling of the court upon this motion, than upon any other question presented in this case.   The only question presented by this motion, not already disposed of, is whether the verdict of the jury was against the evidence. So far as their finding related to the right of defendant to the possession of the cattle, we are clearly of the opinion that it was correct.   So far as the same related to the right of defendant to the possession of the hogs, were we acting as jurors our verdict might have been different.   But it was the province of the jury to determine the rights of the parties according to the weight of evidence, under the instructions of the court.   And we cannot now say that they have so abused their power and duty in the premises as to require the interference of this court.

Judgment affirmed.