THEODORE BRAY, Appellee, v. MASON WISE, Appellant.

82 581
89 353

Replevin: RACEHORSE : KEEPER'S LIEN : ABANDONMENT. A racehorse that had been in the charge of C. while on a circuit during the season was left with the defendant, a keeper of a livery stable, to whom C. assigned his account against the owner for services and expenses incurred in the care of the horse. Within a few hours the horse was taken out of the possession of the defendant and placed in the charge of the plaintiff. Upon C.'s bill being presented to the owner of the horse he disputed the account, and the defendant said, "Let it go till C. gets home, and we will fix it up." Afterwards the defendant again obtained possession of the horse by falsely representing that the owner had sent him for it. *Held*, that if the defendant had any lien upon the horse under chapter 25 of the Laws of 1880, as assignee of the account of C., it was abandoned by his agreement with the owner to let it rest until C. returned.

*Appeal from Council Bluffs Superior Court.*—HON.
E. E. AYLESWORTH, Judge.

FRIDAY, MAY 22, 1891.

THIS is an action of replevin for a horse. There
was a trial by the court without a jury. Judgment was
rendered for the plaintiff. The defendant appeals.
*Affirmed.*

*Wright, Baldwin & Haldane* and *A. W. Askwith,*
for appellant.

*G. A. Holmes,* for appellee.

ROTHROCK, J.—As the action is at law, the judg-
ment cannot be reversed without a finding that it is so
manifestly against the evidence as to indicate passion
or prejudice on the part of the trial judge. With this
well-known rule in view, we will briefly recite the
facts, which we think the learned judge was authorized
to find as established by the evidence. In the summer
of 1888, one J. J. Shea, of Council Bluffs, was the
owner of a horse, which was named "Gray Jim." The
horse was a pacer, with a record of 2 : 24 3-4, and was kept
for racing purposes. During the racing season of 1888,
Shea put the horse in charge of one Carey, whose busi-
ness it was to go on the circuit with horses. Carey
was authorized to sell the horse while on the circuit if
he could find a purchaser. He did not succeed in this
part of his mission, and returned to Council Bluffs with
the horse about September 10, 1888. He took the horse
to a livery stable kept by the defendant Wise, and left
him there, and assigned to Wise an account of one
hundred and sixteen dollars, which he claimed Shea
owed him for keeping the horse and for freight charges
while on the circuit. On the same day Shea ascertained
that the horse was left at the defendant's livery stable.
He went to the stable, and, in the absence of Wise, took
the horse to the livery stable of the plaintiff. On the

same day Shea and the defendant had an interview about the claim which Carey had assigned to the defendant. In this interview Shea disputed the bill for one hundred and sixteen dollars, and the conference was concluded by the defendant saying: "Let it go till Carey gets home, and we will fix it up." On the night of that day the defendant went to the plaintiff's livery stable in plaintiff's absence, and stated to an employe that Shea had sent him for the horse, and by this representation he again acquired possession of the animal. The evidence further shows that it is extremely doubtful whether Shea at that time was indebted to Carey in any amount.

It is claimed that the defendant was entitled to a lien upon the horse for the claim of Carey, and for the few hours the animal was in his barn; and he relies on chapter 25 of the Laws of 1880, Miller's Code, page 585. That act provides as follows: "That keepers of livery stables, herders and feeders, and keepers of stock for hire shall have a lien on all stock and property coming into their hands as such for their proper charges, and for the expense of keeping when the same have been received from the owner or from any person; provided, however, this lien shall be subject to all prior liens of record." Carey was not the keeper of a livery or feed stable. His business was breaking horses and training them for races and speed. It may be questioned whether he was entitled to a lien under the statute. But this judgment can well be sustained without determining that question. When Shea disputed Carey's account in the interview between him and the defendant, and it was agreed that the matter should rest as it was until Carey came home, and it was "fixed up," this was an abandonment by the defendant of any lien upon the horse. The animal was then in the possession of Shea, or of the plaintiff. The defendant could not revoke this agreement by afterwards going to the stable of the plaintiff and obtaining possession of the horse by the untruthful representation that he was sent there by Shea for the horse. This is all there is of the case. AFFIRMED.