HENRY GOSLAR, Appellant, v. JESSE REED, Appellee.

ANIMALS: Negligence in re Line Fence. In an action for damages caused by trespassing animals, verdict may not be directed against plaintiff, on the theory of negligence *per se in the maintenance by plaintiff of his part of the fence*, when the jury might find that both parties maintained legal partition fences, but that defendant's hogs escaped from defendant's land by digging under plaintiff's fence, and that defendant had knowledge of such fact.

ANIMALS: Liability for Escape—Negligence. It is the duty of
2 the owner of stock to prevent the escape of his stock from his
premises, when such stock is prohibited from running at large
at any time; and if he fails in such duty, and damages result,
he is liable. It follows that verdict may not be directed, under
such a state of facts, in favor of the owner, on the ground that
no actionable negligence on his part is made to appear. (Sec.
2315, Code, 1897.)

DAMAGES: Speculation and Conjecture. Evidence reviewed, and
3 held not so speculative and uncertain as not to furnish fair ·
basis to the jury to estimate the damages done by defendant's
trespassing hogs, even though plaintiff's hogs were also in the
same field.

*Appeal from Monona District Court.—J. W. ANDERSON,
Judge.*

## NOVEMBER 1, 1920.

· THE plaintiff sues for damages on account of an alleged
trespass by defendant's permitting his hogs to escape up-
on lands owned by the plaintiff, and there to destroy the
corn of plaintiff. Verdict was directed for defendant,
and plaintiff appeals.—*Reversed.*

*Prichard & Prichard,* for appellant,

*Lutz, Bennett & Lutz,* for appellee.

SALINGER, J.—I. One ground of the sustained motion
to direct verdict is contributory negligence. Appellee
asserts that plaintiff was guilty of such negligence, in that

1. ANIMALS:
negligence
*in re* line
fence.

he did not maintain the fence on the line
of the lands of the parties in such proper
condition as "by law he was bound to do."
At one point on the line, the land of plaintiff is much
higher than that of defendant. On the evidence, the jury
could find that the hogs of the defendant got upon the land
of plaintiff by burrowing a hole under the line fence. It

could find, too, that both parties properly maintained a lawful line fence. And it is clear that the hogs dug in under the fence, and defendant knew it. Manifestly, then, no breach of duty as to the fence was the proximate means of the trespass, or the proximate cause of whatsoever damage was done. The true issue is whether plaintiff was negligent in not meeting the situation created by the digging under the fence. Whether he was, is at least a question for the jury, if there be evidence that plaintiff knew of the hole in time to stop the coming in of the hogs, or evidence that he did nothing, although he knew the hogs were in. Hence it was error to direct verdict because of contributory negligence.

II. Another ground of the sustained motion was that defendant had been guilty of no actionable negligence. Section 2313 of the Code provides for the distraint of animals trespassing upon land. See *Conway v. Jordan*, 110 Iowa 462. Code Section 2314 prohibits swine from running at large at any time. Code Section 2315 permits, instead of distraint, a recovery of damages caused by escaping stock or animals; and this action was brought under this section. We held, in *Foster v. Bussey*, 132 Iowa 640, that, where stock is prohibited from running at large, and injury is done by their escaping from their inclosure, their owner is liable for damages. The effect of this is to make it the duty of this defendant to prevent the escape of his hogs upon the land of his neighbor. Moreover, he knew his hogs had escaped, and were on the corn land of the plaintiff. We are clear it was error to direct a verdict for defendant on the ground that, as matter of law, he was guilty of no negligence.

2. ANIMALS: liability for escape: negligence.

III. There remains the further contention that plaintiff was rightly nonsuited, so far as appellate review goes, because, under the evidence, no jury was warranted in finding more than nominal damages. And defendant says we have settled in the following cases that the evidence in this case will not sustain more than a nominal ver-

3. DAMAGES: speculation and conjecture.

dict. In *Williams v. Brown*, 76 Iowa 643, at 644, it was said:

"Defendant herded his cattle upon the land; but the evidence wholly fails to show how long the land was so used by defendant, how many cattle he herded, and the value of such use, or any other fact which would enable the jury to estimate the damages, if any, which plaintiff sustained. It appears that other persons herded cattle upon the land, during the time it was used by defendant."

And we held that not more than nominal damages were due. In *Foster v. Bussey*, 132 Iowa 640, at 643, 644, we reach the same conclusion, saying:

"The stock of different people were in the corn at different times, and the injuries thereto were distinct and separate. There was nothing to enable the jury to estimate the damages caused by that of each or of defendant."

Of course, the mere statement of a trial rule has no bearing on whether evidence meets or fails to meet such rule. Of course, on such facts as are found in these two cases, this plaintiff could have no appellate relief, because we will not reverse for failure to obtain purely nominal damages. But the question remains whether the evidence is such as is commented upon in the said cited cases. The appellee insists, of course, that the evidence here is, in substance, what it was there, and says that the damages shown were speculative, problematic, and conjectural, and that, therefore, no recovery beyond nominal damages was warranted. But we are of opinion that the evidence in this case is not so speculative and not so void of a basis upon which a jury could estimate damages as that the trial court was justified in holding, as matter of law, that the jury had no material upon which to award beyond nominal damages.

True, the plaintiff, too, had hogs run in the cornfield which the hogs of the defendant injured. True, the jury could find that it was difficult to ascertain just what damages had been caused by the hogs of defendant. For it is

in testimony that the hogs of the plaintiff "were running near to the fence, from one end to the other; that plaintiff's hogs were in the field a couple of weeks, and were eating the corn all the time; that plaintiff's hogs went all over the corn." It is true that one witness, in answer to a question whether or not he knew just what was eaten by the hogs of plaintiff and by those of defendant, answered, "Nothing," but adding what we shall refer to later.

But the jury could also find, on the testimony of the witness Dorothy, that, on the one side of the field farthest from the line fence, only a few acres were "hogged," and that, from there on through the middle of the field, there was no more damage until one got to the east end, where was the hole through which the defendant's hogs entered the plaintiff's land. The jury could find, from the testimony of this witness, that many circumstances indicated that the hogs of defendant did their injury at a spot quite distinct from the territory covered by those of plaintiff. The jury could reasonably make the same deductions from the further testimony of the witness Riley, and could believe the statement of McClary, that several with him "examined the entire field, so that we could tell whose hogs had destroyed the corn." And if it believed the witness Dorothy, they could find: "Mr. Reed made no denial, while we were there, but what his hogs had eaten the corn."

Nor is this a case where the amount is pure conjecture, and where there is no tangible evidence upon which a jury could estimate damages. The witness Dorothy testified he was a farmer, and that, in his opinion, the corn destroyed by the defendant's hogs would equal at least 200 bushels; and the witness McClary, also a farmer, testifies to like effect. McClary adds that he and Dorothy made an estimate as to the amount of corn destroyed, and Dorothy said they estimated four acres entirely gone, and that he thinks there was more than that damaged; that it was possibly five acres; that they estimated the loss would amount to about four acres of absolutely wasted corn, which, in his opinion, would have gone 50 bushels to the acre.

It was error to dispose of the case on the motion to direct. Wherefore, the judgment below must be—*Reversed.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.

EVANS, J. (specially concurring.) I disagree with the discussion in the opinion, but concur in the reversal. The rights and obligations of the parties are statutory, and are fixed by Chapters 3 and 4 of Title XII of the Code. Section 2313 provides:

"Any animal trespassing upon land fenced as provided by law may be distrained by the owner of such land, and held for all damages done thereon by it, unless it escaped from adjoining land in consequence of the neglect of such landowner to maintain his part of a lawful partition fence. The owner of the land from which such animal escaped shall also be liable for such damages if it escaped therefrom in consequence of his neglect to maintain his part of a lawful partition fence," etc.

Section 2315 gives an action for damages without distraint, upon the same condition. Section 2367, Code Supplement, 1913, provides:

"In case adjoining owners or occupants of land shall use the same for pasturing sheep or swine, each shall keep his share of the partition fence in such condition as shall restrain such sheep or swine."

Code Section 2368 provides that the chapter is alike applicable "where stock is restrained from running at large as where not so restrained."

In the light of the foregoing statutes, I do not agree that plaintiff's *neglect,* if any, was, as a matter of law, *not the proximate cause* of the damage, as held in the opinion. Nor do I agree that the fact that Section 2314 prohibits swine from running at large is a controlling consideration; nor does such fact make the liability of the owner of the hogs either greater or less than it would be in the case of escape of cattle or other stock upon plaintiff's land. On the first point, if these hogs were lawfully upon defendant's

land, and escaped through the partition fence, the question presented is: Through whose neglect of maintenance of the fence did they escape? If it was plaintiff's neglect, he cannot recover. If it was the neglect of defendant, he is liable. If the escape resulted proximately from the negligence of both, manifestly plaintiff could not recover. This question of neglect was a jury question, under the evidence, and was quite decisive. On the second point, Section 2314 is obsolete, so far as its differentiation is concerned between stock prohibited from running at large and that permitted to do so. *All* stock is now prohibited. Furthermore, Section 2368 expressly makes the partition-fence statute alike applicable, as above quoted. The liability of the defendant for the escape of his hogs was precisely what it would have been if his cattle had thus escaped.

I specially disagree, therefore, with that part of the opinion which holds that the effect of Section 2314 was to "make it the duty of this defendant to prevent the escape of his hogs upon the land of his neighbor."