Z. WHEELER, Appellant, v. FRED WOODS, Appellee.

MAY 8, 1928.

*Norman Huyck*, for appellant.

*J. O. Watson* and *Julian Garrett*, for appellee.

KINDIG, J.—Plaintiff-appellant and defendant-appellee reside on adjoining farms in Warren County. Between these properties is a partition fence, one half of which is maintained by appellant, and the remaining portion is thus kept up by appellee. On either side of this division line, and immediately adjacent thereto, are the respective pastures of the parties. In each grazing area was a bull, the one being owned by appellant, and the other by appellee.

During the month of September, 1925, appellee's animal broke through, or jumped over, the ''fence'' into appellant's ''pasture,'' where the latter's bull was feeding with a herd of cows. So, like the true knight of old, chivalry prompted this male protector of the group to march forward, in his armor bold, to shield the females under his care from a possible discourtesy or attack by the intruding stranger. But appellee's animal had in his heart the desire to win the fair ladies, and in this ambition he did not intend that his purposes should be thwarted by appellant's bull. Consequently, a fight ensued, not on the grounds before some ancient castle of Europe, but in the meadows of Warren County. As a result of the encounter, appellant's bull was defeated, and so wounded as to require that he be killed by his owner. He was sold to a packing house at Des Moines for $20, but before his injury, it is insisted, the animal was worth $200 or $250. A conference was had between the respective owners, and compromise discussed, which finally ended in a settlement.

The exact terms of this adjustment are in dispute. That agreement, in general effect, embodied the proposition that appellee was to cut, or permit appellant to use the former's binder to harvest, the latter's small grain during the season of 1925. It is the contention of appellee that this understanding amounted to a novation, or a substitution of the contract for the original disputed claim arising out of the tort, and he declares that the implement was to be thus given to appellant at such times as appellee did not need it for his own fields; while appellant urges that the arrangement amounted to no more than an accord, and that there could be no satisfaction until appellee fully executed all the things required of him in the premises, which included the obligation to permit appellant to have the machine whenever he needed it. Furthermore, appellant says that appellee commenced to do the work, but, before finishing, refused to make complete performance. On the other hand, appellee asserts that he was at all times ready, willing to, and did, carry out his part of the bargain. Under apt instructions, the cause was submitted to the jury, which found in favor of appellee.

Errors assigned by appellant will now be considered.

I. One instruction given by the trial court embodied the thought that appellant could recover for the damages caused by

appellee's trespassing animal under the various circumstances and conditions named in the charge, unless "it escaped from adjoining land in consequence of the neglect of" the complaining adjacent "land-owner [appellant] to maintain his part of the lawful partition fence." Because the "trespasser" was a male, appellant says recovery should be allowed him regardless of the condition of the partition fence, and for authority at this point he cites the following cases: *Burleigh & Jackson v. Hines,* 124 Iowa 199, and *Goslar v. Reed,* 189 Iowa 1198.

At the time those opinions were written, there was in existence a statute especially requiring the restraint of certain male animals, and hence it was the rule in this state that a different principle applied to the control of such beast from that relating to those of the ordinary type not thus regulated. See Section 2312, Code of 1897. However, since that time we have been provided with new legislation, and in the present Code there is no distinction made concerning the restraint of domestic animals, for now all are to be so confined or controlled. Section 2980 of the 1924 Code contains this sentence:

"All animals shall be restrained by the owners thereof from running at large."

Both males and females are included. We said in *Hansen v. Kemmish,* 201 Iowa 1008:

"The state is still pre-eminently agricultural, and we think that the statutes requiring animals to be restrained have reference primarily to the industry."

This language was employed in the determination of litigation arising under the 1897 Code; yet the philosophy of the discussion is doubly applicable here, for the reason that, under the present Code, the former difference concerning certain male and other animals has been eliminated.

Fencing is a neighborly responsibility. Mutual burdens in this respect must be borne by adjacent landowners, in order that there may be equal disposition of the liability for keeping stock in the proper territory. Such was the aim of the legislature when it enacted Section 2980, supra, requiring "all animals * * * restrained." Likewise, in furtherance of that idea, the following four sections of the same Code were adopted:

"2981. Any animal trespassing upon land, fenced as provided by law, may be distrained by the owner of such land, and held for all damages done thereon by it, unless it escaped from adjoining land in consequence of the neglect of such landowner to maintain his part of a lawful partition fence."

"2982. The owner of the land from which such animal escaped shall also be liable for such damages if it escaped therefrom in consequence of his neglect to maintain his part of a lawful partition fence, or if the trespassing animal was not lawfully upon his land, and he had knowledge thereof."

"2983. If there be no lawful partition fence, and the line thereof has not been assigned either by the fence viewers or by agreement of the parties, any animal trespassing across such partition line shall not be distrained, nor shall there be any liability therefor."

"2986. Instead of distraining trespassing animals, the injured person may recover all damages caused thereby in an action against the owner thereof, and may join therein the owner of the land from which it escaped, if he is liable therefor, and all or any of the different owners of the animals who have not paid their proportion of the damages or costs."

Appellant waived his right to distrain, under Section 2981, supra, and elected to bring an action for damages in lieu thereof, under Section 2986, supra; but the remedy chosen was as limited, so far as the defense of negligent maintenance under the statute is concerned, as that under the one discarded. Keeping this in mind, it is plain to see that the correctness of the instructions of the district court is apparent, after reviewing the history of the legislation applicable to the subject-matter of this suit; for, under the evidence, uncertainty arose as to where the trespassing bull went over or through the fence. Therefore, the fact-finding body had a right to conclude, if they so found, that the cause of the trespass was appellant's carelessness in looking after his portion of the fence. Necessarily, then, the appellant could not recover, under the above and foregoing legislative enactments, if the record disclosed that he had not discharged his responsibility in relation to the "fence."

II. Complaint is also made because, according to appellant's version of the instructions, the trial court submitted to the jury the question as to whether or not appellee had knowl-

 edge of the vicious or breachy tendencies of the bull. Excuse from accountability, it is argued, does not arise even if the affirmative of that hypothesis is shown. When reciting the allegations of the petition and answer, the trial court did say that the "defendant [appellee] specifically denies that said bull was vicious." Said statement, however, appears in the preamble only; for throughout the direct charges to the jury this objectionable subject-matter is omitted, and it was not in any way submitted as forming the basis for relieving appellee from the payment of damages due appellant for the injured animal. Wherefore, prejudicial error did not result. *Bruggeman v. Illinois Cent. R. Co.*, 154 Iowa 596; *Williams v. Mason City & Ft. D. R. Co.*, 205 Iowa 446.

III. The final legal battle of this controversy is waged over the instructions relating to the effect of the alleged contract of settlement. Was it simple accord, without the necessary satis-faction? Wheeler, the appellant, says it was. Yet, in contradiction of this, the appellee urges it was not, but rather, that the result of the agreement gave rise to a novation or independent contract, which itself rose to the dignity of a satisfaction of the previous dispute for the alleged civil wrong.

These two contrary theories were impliedly, if not expressly, given in the instructions; or perhaps it is more correct to say that the jury was told that appellant could not recover if his claim for damages was in fact settled, as contended by appellee, and that such adjustment was in full satisfaction thereof. To be more specific, the charge to the jury in this regard was to the effect that the compromise itself, concerning appellant's use of the binder, must amount to satisfaction of the demand for damages, in order to warrant a verdict for the appellee; but if the oral compact rose no higher than an offer or an accord only, then, of course, there would be no satisfaction until the requirements in reference to the loan and use of the machine were in all respects fully complied with. Of course, if the understanding of the parties creates an accord only, then there must be a satisfaction thereof before complete relief from the previous obligation exists. *Shields v. Holtorf*, 199 Iowa 37; 1 Ruling Case Law 178, Section 2; 1 Corpus Juris 530, Section 17. See,

also, *Olson v. Shuler*, 203 Iowa 518. *Shields v. Holtorf*, supra, aptly states:

"Sufficient to say that, though the accord was proved, as claimed, the satisfaction was not."

Quite as emphatically, on the other hand, however, it is generally declared by the courts that, if the result of the transaction between the parties amounts to more than an accord,— that is, to a novation or an independent contract of settlement, —the original claim, because thereof, is entirely extinguished; for in such event the new promise itself is accepted as a satisfaction. Distinguishing this relationship from a mere accord, we find that, in the case of the latter, "the new promise" does not amount to a satisfaction until it is fully performed. *Hall v. Smith*, 10 Iowa 45; *Hall v. Smith*, 15 Iowa 584; *Merry v. Allen*, 39 Iowa 235; *Sioux City Stock Yards Co. v. Sioux City Packing Co.*, 110 Iowa 396; *Hannan v. Murphy*, 198 Iowa 827; 1 Ruling Case Law 199, 200, Section 36; 1 Corpus Juris 567, 568, Section 98.

*Hall v. Smith*, 15 Iowa 584, 588, makes use of this language:

"The common law declares that, without a satisfaction, an accord is no bar to a suit upon the original obligation. If, however, the accord is founded upon a new consideration, and accepted as satisfaction, it operates as such satisfaction, and will be held to take away the remedy upon the old contract. This we believe to be in accordance with the current of authorities, and is certainly in harmony with the analogies and equities of the law."

Similar recitations may be found in the other opinions and texts above cited. Torts, as well as contracts, furnish the basis for the novation or independent agreement of settlement. 1 Ruling Case Law 179, Section 4; 1 Corpus Juris, 567, 568, Section 98. 1 Corpus Juris 567, 568, Section 98, contains this phraseology:

"It is too well settled to admit of doubt that, if the promise or agreement itself, and not the performance thereof, is accepted in satisfaction of the demand, and the agreement to accept is based on a sufficient consideration, the demand is extinguished, and cannot be the foundation of an action; and it makes no difference whether the original demand was in tort or contract. Under these circumstances, there is a valid accord and satis-

faction, even though the promise or agreement is not performed.''

Circumstantial, as well as direct, evidence may be sufficient to show the intention of the parties to formulate a novation or independent contract, instead of an accord and satisfaction. *Sioux City Stock Yards Co. v. Sioux City Packing Co.*, supra, embodies these sentences:

''Whether or not the new agreement was intended as a substitute for, or in satisfaction of, the old, is to be determined from the evidence bearing upon the intent and purpose of the parties, and the new agreement need not expressly state that it was so intended. As said in *Levi v. Karrick*, supra [13 Iowa 344], 'The question is one of evidence or contract, and, whether established by necessary implication or from express stipulation, the rule is the same.' ''

1 Ruling Case Law 200, Section 36, consistently asserts:

''Whether the accord or new agreement has been accepted as satisfaction depends upon the circumstances of each case, and must be ascertained from the intention of the parties, and, being a question of intention, is a question for the jury to determine.''

Here, in the case before us, appellee testified that the settlement was to the effect that he was to cut his own grain, and that appellant would be permitted to use the binder when appellee was not employing it, and such understanding itself, appellee swore, was in full settlement of appellant's claim. Accordingly, in harmony with the legal principles above announced, it was proper for the court below, under appropriate instructions, to submit to the jury the question as to whether or not, under the disputed facts and circumstances of this record, the appellant and appellee intended to and did enter into a novation or independent contract of settlement, as distinguished from an accord to be followed by a satisfaction. Thus it was done by the trial court, and, in conformity therewith, the fact-finding body returned a verdict for appellee. Supporting evidence was before them, and we are powerless to change the result.

IV. After the novation or independent contract is accepted in satisfaction, an action cannot be brought on the original debt, whether it rose out of a contract or a tort. 1 Ruling Case Law

201, Section 38. That part of the text therein contained applying to this problem is:

"And where the accord or new agreement itself is accepted in satisfaction, no action can be maintained on the old obligation."

This thought was amply and fully expressed by the trial court in its direction to the jury, and about that there was no mistake, in view and because of the evidentiary matters and particulars of proof appearing in the testimony.

Other matters are argued, but they are of such nature that it is not necessary for us to discuss them, in view of the pronouncements we have hereinabove made.

The judgment of the district court is affirmed.—*Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.