ROY HAACK, Appellant, v. JOHN RODENBOUR, JR., Appellee.

No. 46397.

FEBRUARY 8, 1944.

Burton Parriott, of Remsen, for appellant.

E. P. Murray, of Le Mars, for appellee.

MANTZ, J.—This is a law action in replevin in which the plaintiff, Roy Haack, brought suit against the defendant, John Rodenbour, Jr., alleging ownership and right to the immediate possession of a certain bull which he claimed was held by the defendant without lawful or legal right. In his petition plaintiff demands immediate possession of such bull, or the value thereof if the same cannot be found, and also damages for its illegal and wrongful detention.

Defendant denied the claims of plaintiff and alleged that said bull came upon his premises as a trespasser; that while thereon said bull attacked and killed a bull belonging to the defendant and thereby damaged defendant in the sum of $200, which damages have not been paid; that under the law he distrained the bull until his damages were paid; and averred that he gave notice of his claim of damages to the owner of the bull and to the township trustees as provided by law. Defendant alleged that by reason thereof the claim of the plaintiff to the right to the possession of such bull is without merit. A writ of replevin was issued and the distrained bull was taken from the possession of the defendant.

The jury was waived and the cause was tried to the court and the court denied the claim of plaintiff and entered judgment against the plaintiff and the surety on the replevin bond, with interest and costs, in favor of the defendant herein. Plaintiff has appealed from such judgment.

This is a law action and the waiving of the jury and the submission of the issues to the court give the finding of that tribunal the force and effect of a jury verdict. The case is

not triable de novo here but is triable upon errors assigned. In this appeal we are not to lose sight of the rule that the court will not consider here errors not urged in the court below.

There is little dispute as to the principal facts. Both parties are farmers and live on adjoining farms, the appellant being a tenant. Separating the two farms is a division or partition fence. At the time this controversy arose this fence was a good substantial fence and there has been no claim made by either party that it did not meet the statutory requirements of a lawful fence. On March 9, 1942, appellee had a herd of cattle in the field just east of the partition fence and among this herd was a bull owned by appellee. This bull was the only one owned by the appellee. About noon of that day appellee found among his cattle in a feed lot adjacent to the field an animal known to the record as the "Haack" bull. This bull had marks on his head and body from which it could be readily inferred that he had been fighting recently. The bull of appellee was missing and upon search was found dead in appellee's field about twenty feet from the partition fence. Appellee had seen his bull alive about three hours prior to the time he was found dead. The wires of the division fence near the point where the bull was found were broken and the ground was trampled and disturbed. The dead bull had cuts and bruises and other marks on his body, and when found some of these cuts were bleeding. The general appearance of the bull and the ground indicated that the animal had been in a recent fight. There was no other bull on the premises at the time the dead bull was found save the Haack bull. The Haack bull had been seen earlier in the day in the field adjoining the one where appellee's cattle had been running. There can be little doubt from the record that the bull of the appellee was killed in a fight with the Haack bull. Appellee was of the opinion that the trespassing bull—that is, the one found on his premises on March 9, 1942—was owned by John Haack, a resident of the neighborhood and the father of the appellant. Following the discovery of the dead bull and the presence of the Haack bull on his premises, appellee at once and on the same day went to the home of John Haack and told him of the situation and said, "Your bull killed mine." Haack responded, "That is too bad." They then went to the premises

of appellee and examined the dead bull and the surroundings and saw the Haack bull. John Haack then said, "Well, I might as well take mine home." To which appellee responded, "No, you are going to settle first." Haack then asked, "You expect me to pay?" Appellee said, "Yes. Is this your bull?" Haack answered, "Yes; I will give you $100." Appellee advised Haack that he would not settle for that sum and also that he intended to hold the trespassing bull until his damages were paid. John Haack said nothing to appellee about not owning the bull. Up to that time appellee had not talked to appellant about his claim for damages.

Following the visit of John Haack to the premises of appellee, appellant petitioned for a writ of replevin and tendered a bond, with his father as surety thereon. A writ was issued and under it the trespassing bull was taken from the custody of appellee. Some weeks following this the Haack bull was sold on the market for $212. This bull was over five years old, was white faced and weighed about nineteen hundred pounds. The day following the damage appellee notified the township trustees of his claim for damages and requested them to fix the amount thereof. They came to his premises on March 10, 1942, viewed the dead bull and the fence, and then went to see John Haack about the matter. Appellant was not present. John Haack did not advise the trustees that he was not the owner of the bull. The trustees tried to effect a settlement of appellee's claim for damages but failed and did nothing further in the matter. The evidence does show that the father advised appellant as to the matter of the claim of damages which appellee was making. In fact, John Haack, as a witness, stated that he was representing appellant in the matter. The evidence shows that the appellant saw the dead bull on the premises of appellee.

Appellant in his petition claimed to be the owner of the bull sought to be replevined and as such entitled to the immediate possession thereof; that the bull had a value of $200; and that the defendant (appellee) wrongfully detained possession from the plaintiff (appellant).

The appellant had the burden of showing that he had the right to the possession of the bull held by appellee at the time

he petitioned for the writ of replevin. This proposition is so elementary and well established that we deem it unnecessary to cite authorities so holding. If the appellant failed to sustain his claim so made he cannot prevail herein.

■ It will be noted that appellant, in addition to pleading right to possession, also pleaded that appellee was wrongfully detaining the bull. Appellee denied these claims and alleged that his distraint was lawful. Under the issues raised by the petition of appellant, the lower court denied appellant the relief sought. The question of the burden of proof in replevin cases has caused the courts some difficulty. In the case of Banks v. Lohmeier, 188 Iowa 722, 725, 176 N. W. 789, 790, the plaintiff brought action to replevin two cows which had been upon the public highway and were taken up and distrained by an adjoining landowner under the claim that they were trespassing or running at large in violation of the statute. That case, in effect, holds that ownership appearing, a presumption arises that such owner is entitled to the possession and that the burden is then upon the party imposing distraint to affirmatively establish the facts making such distraint legal. In that case, as in the present case, there was an allegation of the party asking for the writ stating the alleged cause of the distraint. This court, in passing upon the question as to whether such allegation (alleged cause of distraint) made an issue therein, held:

"It does not make an issue, and does not require the plaintiff to negative the alleged cause of detention."

It further held that such allegation is a formal averment and only made necessary by statute.

While there is considerable difference in the facts in the cited case and the one at bar, yet we think that the holding in the cited case as to the burden of proof is here controlling. In passing, we simply call attention to the fact that in the instant case appellant pleaded that appellee's possession of the bull was wrongful, while in the Banks case there was no such claim pleaded.

■ In passing upon the claims of appellant, attention is called to chapter 146 of the Code of Iowa, 1939, dealing with estrays and trespassing animals. Section 2980 is as follows:

"Restraint of animals. All animals shall be restrained by the owners thereof from running at large."

Section 2981: ·

"Trespass on lawfully fenced land. Any animal trespassing upon land, fenced as provided by law, may be distrained by the owner of such land, and held for all damages done thereon by it, unless it escaped from adjoining land in consequence of the neglect of such landowner to maintain his part of a lawful partition fence."

The Haack bull was found upon the premises of appellee on March 9, 1942. A short time prior thereto he had been seen on the premises of the appellant. There is no direct evidence as to how such bull got upon the premises of the appellee. True, there were some broken wires in the fence close to where the dead bull was found, and it might be inferred that he entered the field of appellee at that point. However that may be, it is clear that under the evidence the Haack bull when found on the premises of the appellee was a trespasser within the meaning of the law. Burleigh v. Hines, 124 Iowa 199, 99 N. W. 723; Wheeler v. Woods, 205 Iowa 1240, 219 N. W. 407.

On the question of ownership, the court, in a memorandum finding appearing in the record, expressed the opinion that the evidence failed to show that the appellant was the owner of the trespassing bull on March 9, 1942. The court called attention to the fact that at no time prior to the trial, in the various negotiations concerning the claim for damages by the bull, did John Haack disclaim ownership of the bull. As a witness he referred to the animal as "my bull," "I might as well take mine home," "I borrowed him to my son." The record shows that the father offered to pay appellee $100 for damages; also that he signed the replevin bond as surety. He said, too, that in the negotiations involving the transactions he was acting for his son, appellant herein. The appellant stated that he knew of the negotiations and of the claim of appellee for damages.

The evidence shows that prior to the time appellee discovered the Haack bull on his premises, the bull was on the premises then occupied by the appellant. At times he was tied

up thereon and at times out in the field. The bull being on his premises would indicate that he had the right to the possession thereof. Chapter 514, Code of Iowa, 1939. Bray v. Wise, 82 Iowa 581, 48 N. W. 994; Beroud v. Lyons, 85 Iowa 482, 52 N. W. 486; Kingsbury v. Buchanan, 11 Iowa 387. In Richards v. Hellen & Son, 153 Iowa 66, 73, 133 N. W. 393, 396, this court said:

"The question in a replevin action is the right to the possession of the property at the time the action is brought. * * * Ownership is not essential to enable one to recover possession. One having the right to present possession may maintain an action even against the true owner."

Even if appellant was not the owner of the bull, still he might have the right to possession. Such right to possession would be a fact question and the same was passed upon by the lower court, which held that by reason of the distraint of the bull, invoked by the appellee, the appellant was not entitled to such possession.

Under the record there can be little doubt that the Haack bull, on March 9, 1942, was a trespasser and as such liable to distraint under chapter 146 of the Code of Iowa, 1939. That appellee took the necessary steps in order to enforce said distraint can scarcely be questioned. On the same day his bull was killed he notified John Haack of the damages. John Haack admitted this and said he advised his son of appellee's claim. Appellee notified the trustees of his claim and the evidence shows that the father met with the trustees and there discussed the claim of appellee. It is difficult to see what other steps appellee could have properly taken in the premises.

The able trial court in finding and judgment held that the appellee had a right to restrain the trespassing bull, and, having that right, was entitled to retain possession of such bull until his damages were settled. This is a finding of fact by the court and has the force and effect of a jury verdict and is abundantly supported by the evidence. Under the record made, we think that no conclusion other than that reached by the trial court would have been justified.

One of the points assigned by the appellant was that the

court in its judgment erred in holding "that said bull did not escape through said fence because of the neglect on the part of the defendant [appellee] to maintain his portion of the partition fence and finds that said partition fence was in good condition and repair as required by the law of Iowa."

We do not find that this claim was advanced in the court below by the appellant. In his motion to set aside the verdict and grant a new trial, one of the grounds urged was, "That the findings of the Court and judgment directed herein are contrary to law."

If the proposition here argued grows out of that part of the motion it is because of a rather hasty inference. However, appellant having argued it, we will consider it so far as it has any application. There is no evidence that the division fence did not meet the requirements of a lawful fence on March 9, 1942, and there is no evidence from which it could be even remotely inferred that the appellee was in any manner negligent in the maintenance of that fence.

Appellant rather seems to argue that it was the duty of the appellee to guard against outside bulls over and above maintaining lawful fences. He apparently seems to ignore the nature and quality and disposition of the bull over which he claimed dominion. The trespassing bull was a large animal, weighing nineteen hundred pounds, and was something over five years old. Few men who are cognizant of conditions would argue that a lawful fence would afford an effective barrier against the intrusion of such an animal. It is a well-recognized fact that bulls are frequently possessed of vicious dispositions, especially noticeable during breeding season, and especially when other bulls are present. The evidence shows that the Haack bull was tied up at times; that he had "breachy" tendencies. A neighbor testified that on one occasion this bull had got off the reservation—so to speak—and bred a heifer belonging to the witness. The standing or breeding of the adolescent heifer, whether plebeian or to the manor born, does not appear from the record. However, the witness contented himself with indulging in the somewhat ambiguous and charitable statement that "He [the bull] did not do anything at the time that any bull

would not have done under the circumstances." We think that the knowledge which appellant must have had as to the tendencies of the bull and the known disposition and habits of such could not be ignored by him. Burleigh v. Hines, supra; Wheeler v. Woods, supra. Appellant made no effort to show that appellee was in any manner negligent in the whole transaction. We think his claim of error, even if properly raised, is without merit.

In support of this proposition the appellant has cited the cases of Hansen v. Kemmish, 201 Iowa 1008, 208 N. W. 277, 45 A. L. R. 498, and Coakley v. Dairy Cattle Congress, 228 Iowa 1130, 293 N. W. 457. In the Hansen case the plaintiff was driving his automobile upon the public highway at night and while doing so ran into and collided with defendant's boar, then running at large on the highway. The question involved was as to the negligence of the owner of the boar in allowing that animal to be on the public highway. This court held that the presence of the animal in the public highway raised the presumption that its owner was negligent in permitting it to be there, but that the owner could show evidence to overcome or rebut this presumption. There the question involved was the negligence of the owner of the animal. In the present case there is no claim or evidence that the appellee was negligent in any manner.

In the Coakley case, supra, there was involved the question of the negligence of the groom in bridling a horse. While removing the halter and attempting to put on the bridle, the horse got out of the stall and into the runway, and the plaintiff brought suit against the owner claiming negligence on the part of the groom and damages suffered thereby. The lower court allowed the jury to consider the question of negligence of the groom in attempting to bridle the horse. The jury found for the plaintiff. On appeal this court reversed the action of the lower court, holding there was no negligence as a matter of law.

We fail to see wherein either of the cited cases has any application to the facts in this case.

In connection with his argument on such point, appellant places considerable reliance upon the holding of this court in Wheeler v. Woods, supra. We cannot agree that the case is authority for the claim made as applied to the facts in this case.

In that case one of the issues was as to whether the bull became a trespasser by entering the field of plaintiff through his part of the partition fence, and it was the claim of the defendant that plaintiff had not properly maintained his part of that fence. The court so instructed and the jury found for the defendant. Upon appeal to this court that instruction was approved and the court held that the jury could properly have found that the damages claimed could have arisen by reason of the negligence of the plaintiff. No such point is raised here; the evidence is all to the contrary.

█ The other grounds for reversal as set forth in appellant's brief and argument have to deal with the measure of damages allowed by the court. The evidence shows that the bulls were of about the same value, that is, $200 each. Appellant pleaded that his bull was worth $200 and testified that he sold him for $212. The evidence shows that the appellee's bull was of the same value as the Haack bull. There can be no question that appellee's bull was killed in a fight with the Haack bull, then a trespasser. The damages of appellee would be the value of his bull, and in the distraint this would be the value of his interest in the animal distrained. The record clearly shows that this was the manner in which the court arrived at its verdict. We think that the court in arriving at its verdict and judgment applied the correct rule as to the measure of damages as applied to the facts in the case. The court found that the Haack bull was a trespasser and as such had killed a bull of appellee's to his damage in the sum of $200. We think the court was right when it held "that the value of the defendant's [appellee's] right in said bull is the sum of two hundred ($200.00) dollars * * *." It is difficult to see wherein the court could have arrived at any other figure. Appellee had a right to be paid his damage, and whether the value of the Haack bull or that of the dead bull was the yardstick the result is the same, they being of equal value.

While it may not have any particular bearing on the legal rights of the parties to this suit, still we think that the actions and conduct of appellant following the distraining of the bull of which he claims to be the owner throw an interesting sidelight on the way he dealt with the matter. He and appellee

were neighbors, living on adjoining farms. We feel constrained to say that, acting under general usage, understanding, and custom there exist between neighbors certain moral obligations, not the least of which is to endeavor to live and act toward each other in the spirit of amity and friendship.

It is fair to state that when the appellant learned of the damage the bull had done to the property of his neighbor he did not demean himself as a good neighbor, in the common acceptance of the term, in seeking out the injured party and making a good-faith effort to settle or adjust the matter without litigation. Even before appellee had an opportunity to notify the trustees of his damage, appellant had taken prompt and rapid steps to set in motion the machinery of the law to take the bull from the appellee in disregard of his claim for damages. We think it can be inferred from the record that he was taking that action at the very time appellee and the father of appellant were looking over the scene of the killing and discussing the matter of a settlement of the damage claim of appellee.

It does seem to us that his acts in the premises as shown by the record savor of a studied indifference to that most wholesome and salutary custom of being a good neighbor. We think that the lower court could have considered and possibly did consider such acts and conduct on the part of the appellant on the matter of his credibility.

The trial court denied the appellant the relief sought and entered judgment against him and in favor of appellee for the sum of $200, interest, and costs. In so doing we hold the lower court did not err, and the case is affirmed.—Affirmed.

SMITH, C. J., and MULRONEY, MILLER, HALE, WENNER-STRUM, BLISS, and OLIVER, JJ., concur.

GARFIELD, J., concurs in result.