D. H. PARSONS, v. PHILIP MANSER, Appellant.

Action for Damages Caused by Bees:   LIABILITY OF OWNER:   NEG-
LIGENCE;   CONTRIBUTORY NEGLIGENCE:   JURY QUESTION.   Plain-
tiff's horses were attacked and killed by bees kept by defend-
ant.   Under the facts in the case it is held that, the question
of negligence of defendant by reason of the place in which the
bees were kept and his knowledge of their inclination to in-
terfere with horses, and the contributory negligence of plain-
tiff in hitching his team near the bee hives, are for the jury.

Same:   PROXIMATE CAUSE.   If by reason of defendant's negligence
the first attack of the bees upon the horses was the proximate
cause of their death, then he is liable, regardless of any duty
owing to plaintiff while on the premises.

Same:   EVIDENCE:   The question of whether defendant's bees at-
tacked the horses while hitched in the road was for the jury.
Evidence sufficient to support a finding that they did.

*Appeal from Warren District Court.*—HON. J. H. APPLE-
GATE, Judge.

THURSDAY, JANUARY 22, 1903.

PLAINTIFF'S horses were stung to death by defendant's
bees.   From judgment for damages the defendant appeals.
—*Affirmed.*

*O. C. Brown* for appellant.

*J. O. Watson* for appellee.

LADD, J.—The plaintiff is a peddler of medicines. As such he called at the house of defendant to sell goods on the 7th day of July, 1900. He had hitched his team to a post a little west of the gate leading to the house, in the highway south of it, and about five feet from the fence. There were two bee gums about twenty-five feet north of the post in defendant's yard, and three more ten or twelve feet farther on. Trees stood close together west and north of this yard, and shrubbery and bushes to the east. The only unobstructed passage was to the south and southeast. Shortly after entering the house, he heard a crash, and upon running out found that the horses had pushed through or over the fence, and their heads were were within a few feet of the hives. The hind wheels of the wagon were still on the fence, and one horse was lying down. Bees covered them. He immediately unhooked the traces, while defendant's daughter cut the lines, but both were soon compelled to flee for their own safety. Two gums were afterwards overturned by the horses. She went after help, while he did what he could by throwing water on the horses and trying to remove them.

I. The beehives were painted white, and stood about two feet above the ground. They were in clear view from the road, so that plaintiff could have seen them had he looked. This he did not do, but hitched his team where injury was likely to occur. Appellant urges that he was guilty of contributory negligence, and that the evidence failed to establish neglience on the part of the defendant. But he was entitled to the free use of the highway, and had the right to assume that those keeping animals of whose mischievous nature every one is presumed to have knowl-

I. LIABILITY of owner: negligence: contributory negligence: jury question.

edge would exercise reasonable care for the protection of others from their depredations.　True, bees may not be confined like the wild beasts.　To roam seems to be necessary to their existence.　They fly great distances, and, if interfered with, or their course obstructed, are likely to resent by the use of their only available weapon.　Every one harboring creatures *feræ naturæ* is charged with knowledge of their habits and evil propensities.　*Moss v. Pardridge*, 9 Ill. App. 490; *Com. v. Fourteen Hogs*, 10 Serg. & R. 393; *Muller v. McKesson*, 73 N. Y. 195 (29 Am. Rep. 123); *Besozzi v. Harris*, 1 Fost. & F. 92; *Laverone v. Mangianti* 41 Cal. 138 (10 Am. Rep. 269).

There is no reason for an exception in favor of the bee.　Indeed, their disposition to make themselves felt is a matter of common observation or experience from early childhood.　But they are very useful, the apiary often furnishing a livelihood, and generally proving a source of profit; and the books seems to look with more favor upon the keeping of animals useful to man than those which are worthless save as curiosities.　For this reason the rule of absolute liability for the consequences of injuries received from wild beasts kept in confinement, declared in the earlier decisions, even if regarded as sound, ought not to be extended to creatures so nearly domesticated.　See *Spring Co. v. Edgar*, 99 U. S. 651 (25 L. Ed. 487); *Decker v. Gammon*, 44 Me. 322 (69 Am. Dec. 99); *Vredenburg v. Behan*, 33 La. Ann. 627; *Filburn v. Peoples Palace & Aquarium Co* 25 Q. B. Div. 258; *Manger v. Shipman*, 30 Neb. 352; *May v. Burdett*, 9 Q. B. 111. But that rule seems to have been somewhat relaxed, or, at least so explained as to be better understood.　Judge Cooley, in his work on Torts, takes the position that, as the keeping of wild animals for many purposes has become recognized as proper and usful, the liability of the owner or keeper for any injury by them to the person or property of others should rest on the doctrine of negligence; that, while a

high degree of care is demanded, yet if, notwithstanding this, they do mischief, it should be treated as accidental only.    Cooley, Torts, 348.    In *Earl v. Van Alstine*, 8 Barb. 630, Sheldon, J., after a careful review of authorities then existing, reached the conclusion that liability depended not on the fact that animals occasioning the injury are *feræ naturæ*, but upon the owner's knowledge of their disposition.    Thus domestic animals are by nature harmless, and upon this the owner may rely until he has ascertained to the contrary.    If, however, he harbors a domestic animal known to him to be ferocious, he is liable, without proof, of having become aware the animal has previously been guilty of like acts.    See 2 Cyclopedia, Law & Proc. 368.

Wild animals are by nature fierce and dangerous, and hence of this every one is charged with notice. . That is their natural state.    The conclusions he reached are: "(1) That one who owns or keeps an animal of any kind becomes liable for any injury the animal may do, only on the ground of some actual or presumed negligence on his part:    (2) that it is essential to the proof of negligence, and sufficient evidence thereof, that the owner be shown to have noticed the propensity of the animal to do mischief;    (3) that proof that the animal is of a savage and ferocious nature is equivalent to proof of express notice." In *May v. Burdett*, 9 Q. B. 101, the wife had been bitten by a monkey.    The declaration alleged the ferocious character of the animal and defendant's knowledge of it.    Subsequent to verdict, defendant moved in arrest because of the omission to aver negligence, and Chief Justice Denman said:    "But the conclusion to be drawn from an examination of all the authorities appears to us to be this:    That a person keeping a mischievous animal, with knowledge of its propensities, is bound to keep it secure at his peril, and that, if it does mischief, negligence is presumed.    The negligence is in keeping such an animal after notice."

Liability for safe-keeping depends not so much on the classification of animals into wild and domestic as upon their natural propensity for mischief. If they are ferocious and savage, like the lion, tiger, etc., the keeper is bound to know the danger incident to their confinement; and the mere charge of not having been so restrained as to avoid injury is tantamount to an allegation of negligence. But bees, while generally classed as *feræ naturæ* are so useful and common as to be all but domesticated. Keepers of the apiary have carefully studied their habits and instincts, and control them almost as certainly as domestic animals. Serious injuries from them are very rare, and, unless some want of care in their management is shown, the owner ought not to be held responsible for damages occasioned by them. See *Earl v. Van Alstine*, 8 Barb. 630. Nothing could be done by the keeper of bees to protect all from their attacks. These might occur miles from the hives, and beyond his reach. But they have fixed habitations. *State v. Repp*, 104 Iowa, 305. The location for these is always a matter for his determination, and it is not too much to exact of him the exercise of ordinary prudence in so placing the hives as to avoid unnecessary danger to those who are likely to make lawful use of the premises or the highway nearby. In other words, he must, as was held in *Tellier v. Pelland*, 5 Rev. Leg. 61,—a similar case,—so use his own as not to interfere with the rights of others.

The defendant naturally expected people to visit his home, and that teams would in all probability be hitched to the post. It was put there and maintained for that purpose, and this in itself was an assurance that it was a safe place to leave horses. But that was the course the bees were likely to fly in going to and from their hives, and there was evidence to the effect that they were prone to attack horses when perspiring, if near them. Moreover, the defendant was advised of this, as his daughter

had cautioned a music teacher in his presence of the danger from them in tying her horse to this very post but a few days before. In this respect the case differs from *Earl v. Van Alstine, supra,* where the bees had been in the same place eight years without knowledge of their molesting any one. Because of their situation and the notice of their inclination to intefere with horses when hitched where plaintiff left his team, the question of defendant's negligence was for the jury, as was also that of contributory negligence.

II. Appellant has called attention to several authorities to the effect in principle that plaintiff, in entering defendant's premises, was merely a licensee, and assumed the risks of their condition. See *Faris v. Hoberg,* 134 Ind. 269 (33 N. E. Rep. 1028, 39 Am. St. Rep. 261); *Dobbins v. Railroad Co.,* 91 Tex. 60 (41 S. W. Rep. 62, 38 L. R. A. 573, 66 Am. St. Rep. 892); *Gibson v. Leonard,* 143 Ill. 182 (32 N. E. Rep. 182, 17 L. R. A. 588, 36 Am. St. Rep. 376); *Plummer v. Dill,* 156 Mass. 426 (31 N. E. Rp. 128, 32 Am. St. Rep. 463); *O' Connor v. Railroad Co.* 44 La. 339 (10 South. Rep. 678); *Hart v. Cole* 156 Mass. 475 (31 N. E. Rep. 644, 16 L. R. A. 557). What bearing this has on the case we are unable to understand. If, because of defendant's negligence, the bees attacked the horses left without fault in the road, and, owing to this, they crowded through or jumped over the fence in the vicinity of the hives, and were so injured as that death resulted, of which the first attacks were the proximate cause, then he is liable, regardless of any duty owing to plaintiff while on the premises.

*2. SAME: proximate cause.*

II. Appellant urges that there was no evidence from which it could be found the bees stung the horses in the road. No direct testimony to that effect was offered, and it could hardly be expected that the bees attacking the horses would be specifically identfied as defendant's. It was shown that the team was

*3. SAME: evidence.*

gentle; that the gums were but about twenty-five feet distant, facing toward the horses; that the bees went away and returned in the direction of the horses; that, if the wind blew from the horses in the direction of the gums, they would be likely to attack them. The circumstances were such as to render it reasonably probable that the attack by bees from defendant's hives caused the horses to break loose. A gentle team would not be likely to break away because of the biting of flies, and the suggestion that some one else's bees may have done the mischief is not of importance, in view of the situation. We think the question was f ·r the jury. See *Brownfield v. Railway* 107 Iowa, 254.—AFFIRMED.