MARY HICKEY, Appellee, v. SHERMAN FREEMAN, Appellant.

ANIMALS: Duty to Restrain Buck Sheep. The actual owner of a buck sheep is liable for personal injuries inflicted by the animal while trespassing, even though such owner does not, at the time, have actual care of the animal, is not negligent, and is without knowledge of its vicious propensities.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

MAY 13, 1924.

REHEARING DENIED SEPTEMBER 20, 1924.

ACTION for damages caused by the plaintiff's being injured, as is alleged, by a vicious buck sheep, the defendant being the owner, and holding the legal title to it, which animal was not restrained by him, and which trespassed on the farmyard of plaintiff and attacked her. Trial to a jury. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*Chas. J. Haas,* for appellant.

*Deacon, Sargent & Spangler* and *D. C. Hutchison,* for appellee.

PRESTON, J.—In the petition, plaintiff pleaded liability on two theories. It is alleged that defendant was the owner of a vicious buck sheep, which he negligently permitted to run at large, with knowledge of its vicious character, and that the buck, while trespassing on plaintiff's land, attacked and severely injured her. In an amendment, plaintiff alleged that defendant was the owner of a buck sheep which he failed to restrain, and that the said male animal, while so unrestrained, trespassed upon plaintiff's premises and severely injured her.

The answer was a general denial.

Though there was a conflict in the evidence at some points, the jury could have found the facts as claimed by the plaintiff. Briefly, the facts are these. Plaintiff, a widow, with a family of boys, lived on a 76-acre farm near Toddville. She performed the usual duties of a farm housewife, doing all the housework herself. The defendant resided on a small fruit farm, west of Cedar Rapids. He also owned a 200-acre farm, adjoining plaintiff's land. This farm was leased to a tenant, Hepker. It was about nine miles from Cedar Rapids. This farm was leased for cash rent, and defendant made no reservations in the lease. The tenant was in full control of the farm. Defendant could have removed the buck at any time, and did so after this trans-

action.  According to appellant's contention, the sheep had never shown any signs of being cross or unruly, prior to the transaction in question, October 17, 1918.  He testifies that, about September 1, 1918, he took the buck to Hepker's, and by arrangement left him with Hepker for pasturage, Hepker agreeing to keep him in consideration for his use for breeding purposes.  Appellant also contends that the buck was put in a well fenced pasture at Hepker's, but got out, and went over to plaintiff's, about three fourths of a mile away, on the afternoon of the 17th.  It is conceded, however, that Hepker had seen the buck out twice before, and on one of these occasions saw him climb out over the low water tank which was set in the fence.  It was a cement tank, about two and one-half feet high.

On the other hand, plaintiff's evidence tends to show that, in the summer of 1918, defendant kept the buck in his orchard; that, during the summer, the buck became vicious and unruly, and one day, while appellant's wife was in the orchard, the buck attacked her; that, learning this, defendant decided to take him to his large farm.  A witness testifies that he heard the conversation between defendant and the tenant in reference to taking the buck to the large farm, and that appellant told Hepker that the buck had knocked his wife over, and that he had become vicious, and that appellant was unable to keep him at the small place, and for that reason had decided to take him to the large farm; that at one time the sheep escaped, and attempted to get into the tenant's house, and Mrs. Hepker, after attempting unsuccessfully to fight him back with a broom, called her husband, to take charge of the animal.  It is also testified that at other times the buck showed signs of viciousness, by butting into the fence; that finally Hepker notified appellant that the sheep had become so unruly and vicious that appellant would have to take it away.  This was before the injury to plaintiff.  The animal remained at Hepker's.  After plaintiff was injured, appellant came over and got him.  As said, on the 17th the animal again escaped, and went over to plaintiff's farm. Plaintiff came out of the house and went to the chicken house, to feed the chickens.  There was a swinging gate in the fence, through which she went in going to the chicken house, and as

she returned through the gate, the buck attacked her, butted her, and knocked her down. She says she managed to get up, and walked slowly to the house. The buck followed. She had never seen the sheep before. Her son says that he saw the sheep the rest of the afternoon; that it ran around, butting the house and knocking over the plants and things; that Doctor Houser came, about half an hour after the sheep had butted plaintiff; that, while the doctor was there, the animal stood around and looked in the house and in the window; that, when the doctor was at the door, the ram was at the door, and tried to get in through the screen door. The doctor had his driver get a rope, and tried to get it around the sheep's neck. There is evidence that plaintiff lost time, and was unable to perform her usual household duties. She was confined to her bed for a time. After that, she used a crutch, and later a cane, and has used a cane up to the time of the trial. There is evidence that her injury is permanent. The knee is stiff and swollen, and is a permanently stiff knee. She has suffered pain, as she says, continually from the time of the injury. The doctor called on her frequently for several months, about seventy-five calls. There was a cast on her knee from four to six weeks. The purpose of the cast was to lessen the pain and keep the limb straight, if it should become stiff. The doctor testifies that he noticed symptoms of pleurisy resulting from the absorption of the poisonous fluid from the knee; that it has caused heart trouble.

1. The point most strongly stressed by appellant is in regard to the word ''owner.'' The question was raised in different ways, by motions to direct a verdict, by offered instructions, and by motion for new trial. Appellant's position may best be stated by reference to his offered instructions, the statement of the substance of which will suffice. They are to this effect: that by statute it is made the duty of the owner of a buck sheep to restrain him from running at large, and for failure so to do he is liable for damages; but that the word ''owner,'' as contemplated by the law, means the person who has the possession, control, care, and charge of the animal; and that, if the jury should find that defendant had arranged with Hepker to keep the sheep, and had put it in the possession and under the control of Hepker,

then defendant is not liable for any injuries consequent upon the escape of the sheep from Hepker, through accident or by reason of Hepker's carelessness; and further, that the basis of the action is negligence, and that the owner is not liable for damages caused by the escape of the sheep unless he has been guilty of some negligence; and that, unless the jury finds that the sheep was in fact vicious, and likely to butt persons, and that defendant willfully or negligently permitted the sheep to run at large, he is not liable for plaintiff's injuries. Another offered instruction predicates the right to recover upon the question of defendant's knowledge of the fact that the sheep was vicious, if it was so.

The trial court instructed substantially that, under Iowa law, the owner of any stallion or buck shall restrain the same, and that it is against the law to permit such male animal to run at large.

"Plaintiff is not required to prove the defendant knew that the buck sheep in question was vicious, and if you find that defendant did permit such buck sheep to be at large or trespass upon plaintiff's property, in violation of the law, the defendant is liable for damages done by such buck while so unlawfully at large, unless the plaintiff herself was at fault."

The court further instructed that, if the jury should find that the buck was running at large, or trespassing upon the plaintiff's property, and that defendant had failed to confine or restrain the buck, and that, on the date in question, the buck attacked plaintiff, and injured her knee and leg, and plaintiff did not by her own negligence contribute to or cause the attack and the injuries, if any, plaintiff was entitled to recover from defendant damages, if any, resulting from the injuries, if any, inflicted upon her by the buck.

It is appellant's contention that the undisputed evidence showed that the sheep was delivered to Hepker as bailee, for pasturage purposes, and that defendant had neither the custody nor control of the animal, and that the owner of a domestic animal is not liable for trespass committed by it while in the keeping of an agistor or bailee, the liability being imposed not because of ownership, but because of possession and duty to con-

trol. A number of authorities are cited on this point, among them 3 Corpus Juris 144, and two Iowa cases, *Alexander v. Crosby,* 143 Iowa 50, 52 (same case on second appeal, 150 Iowa 239), and *Neubrand v. Kraft,* 169 Iowa 444. The first of these is a dog case. Dogs are not included in the statute to be cited in a moment. The *Neubrand* case is an automobile case, where it was held that the bailor of an automobile for hire who furnishes no driver is not, ordinarily, responsible to third persons for the negligence of the bailee. A number of the cases cited are where the bailee was the defendant, and it was held that he was liable, and not that the owner is not liable. It is claimed by appellee that there are cases holding that an owner is liable, regardless of bailment. The cases are cited. The trial court, by the instructions before set out, placed plaintiff's right to recover upon the Iowa statutes. We are of opinion that the statutes govern.

Section 2312, Code, 1897, provides that the owner of any stallion or buck shall restrain the same, and further provides that any such animal may be taken possession of and sold, to pay the damages done by the animal. Code Section 2315 provides that:

"Instead of distraining trespassing stock or animals, the injured person may recover all damages caused thereby in an action against the owner thereof, and may join therein the owner of the land from which it escaped, if he is liable therefor."

Section 2311, Code, 1897, gives the meaning of terms, as follows:

"As used in this chapter, the term 'owner,' used with reference to animals, means anyone entitled to the present possession thereof, the one having care or charge of them, and the person holding the *legal title* to them. * * * The term 'animals' means all animals which may be distrained under this chapter; and 'trespassing stock or animals' means those unlawfully upon land, or running at large contrary to law or police regulations."

Under these statutes, we have held that the owner of certain male animals, as a bull, or in this case a buck, is liable, and that it is not necessary to show knowledge of vicious propensities or negligence. They are prohibited from running at large or tres-

passing. It is the duty of the owner to restrain them. *Burleigh & Jackson v. Hines,* 124 Iowa 199, 201; *Meier v. Shrunk,* 79 Iowa 17, 21. Section 2314 of the Code enumerates other animals which are not permitted to run at large, and provides that such animals, when trespassing on land, may be distrained and held for damages.

The evidence in this case shows that the buck owned by appellant was, under Section 2311, trespassing, in that it was unlawfully upon plaintiff's land when it made the attack upon her. Under such circumstances, the owner of a domestic animal is liable for its acts, without notice of the animal's vicious propensities, and without negligence on the part of the owner. 2 Cyc. 376; *Meier v. Shrunk,* supra; *Burleigh & Jackson v. Hines,* supra. We said in the *Burleigh* case:

"Male animals prohibited from running at large are subject to a different rule from that applicable to animals in general. The owner of male animals is bound at his peril to restrain them from running at large."

For cases construing statutes similar to our own, see *Galvin v. Parker,* 154 Mass. 346 (28 N. E. 244); *Sheridan v. Bean,* 8 Metc. (Mass.) 284 (41 Am. Dec. 507).

It is contended by appellant that the Iowa statutes with reference to animals do not affect the rule contended for by him, that liability is imposed because of possession and duty to control, and not because of ownership. We think this contention cannot be sustained. One of the cases cited to sustain appellant's contention is *Laflin v. Svoboda,* 37 Neb. 368 (55 N. W. 1049). All that that case holds is that the word "owner" includes depasturers having the custody of the cattle. It is not an authority for holding that the one having the legal title to the animal is not liable. It may be that, under Section 2311, the tenant, Hepker, as well as the one holding the legal title, would be liable. But that question is not before us.

2. It is thought by appellant that Instruction No. 9 and perhaps some others are in conflict with the instructions before set out. If there is any conflict, we think it is without prejudice to the appellant. No. 9 is a short instruction. We think, however, that this instruction has reference more to proximate cause

and contributory negligence. The substance of it is that, if the jury does not believe from the evidence that the buck sheep attacked the plaintiff and injured her knee and leg, or if the injuries, if any, received by plaintiff were the result of negligence on her part, she could not recover. It was claimed by defendant that the buck did not attack plaintiff, as claimed, but that it was only trying to get something to eat out of the kettle she had in her hand, after she had fed the chickens. If it be thought that there is any conflict in the instructions because of the theory of knowledge and negligence, and the other theory that there was liability under the statute, then it is enough to say that the two theories were still in the case, since the amendment did not withdraw the allegations of the original petition. The appellant offered instructions on the theory of liability from negligence. At any rate, the trial court instructed, and submitted the case to the jury, on the theory of liability under the statute, and we have seen that this was correct. It may be that plaintiff could have sued either way; but, if she bases her claim on the statute, she could not recover on her common-law right. 3 Corpus Juris 145, Note 81.

3. Of plaintiff's claim for damages for personal injuries, bodily pain and suffering, and mental anguish, referred to in Instruction No. 10, the court said that such damages are not, in their nature, susceptible of exact monetary value. We think the instruction is not susceptible to the construction claimed for it by appellant; but if, as claimed, the instruction refers to the monetary value of her loss of time, of which it is claimed there is no evidence as to the value, we do not understand the rule to be as contended for by appellant. The plaintiff was a housewife, and did her work as such. Under such circumstances, the amount of recovery for loss of time or value of services is a matter within the discretion of the jury. There was evidence of plaintiff's age, health, strength, etc. There was evidence that her injuries were permanent, and this had a bearing on loss of time and incapacity to labor in the future.

The objection to Instruction No. 11, that it authorized a recovery for future pain and suffering without limiting recovery to such as it was reasonably probable she would suffer, as shown

by the evidence, is not well taken. After reciting the different elements of damage, the court said, "or to which she is reasonably certain to be subjected in the future, if any."

There was no prejudicial error, and the judgment is— *Affirmed.*

ARTHUR, C. J., EVANS and FAVILLE, JJ., concur.