**Ezra WENNDT et al., Appellants,**

v.

**Merlin LATARE, Appellee.**

**No. 54736.**

Supreme Court of Iowa.

Sept. 19, 1972.

Howard M. Remley, and David M. Remley, of Remley, Heiserman & Story, Anamosa, for appellants.

Harry E. Wilmarth, and James H. Carter, of Shuttleworth & Ingersoll, Cedar Rapids, for appellee.

MASON, Justice.

Ezra Wenndt and his two sons Duane and Larry, owners of a purebred, registered Angus bull "H & K Bardoliermere 6," instituted a law action for damages resulting from injury to their bull allegedly caused by the unlawful trespass of a bull belonging to defendant, Merlin Latare, a neighbor.

The trial court submitted plaintiffs' case to the jury solely on the theory that they must establish defendant was negligent in failing to restrain his bull from running at large. Of course, the issues of proximate cause and damages were also submitted. The jury returned a defendant's verdict.

Plaintiffs in their motion for new trial asserted that under the pleadings and evidence they were entitled to have their cause of action submitted to the jury both on a theory of negligence and on a theory of strict liability. The motion was overruled.

Plaintiffs appeal from judgment entered on the jury verdict, from the order overruling their motion for new trial and from adverse rulings on objections to evidence.

On September 10, 1968, and all times material hereto, plaintiffs and defendant each kept stock cows and an Angus herd sire in adjoining west and east pastures, respectively, separated by a fence line running north and south. That day, however, plaintiffs discovered their bull panting and lathered up in a mud hole near their farm buildings. Simultaneously, plaintiffs also found defendant's bull in their pasture and a hole in defendant's half of the dividing fence. Defendant was summoned by telephone and together plaintiffs and defendant managed to return defendant's bull to defendant's pasture through the newly discovered opening in the fence.

Subsequent examination and treatment by plaintiffs' veterinarian revealed plaintiffs' bull suffered from a severely herniated scrotum. The testicles were badly damaged; all breeding services of the bull were lost. Plaintiffs' bull was otherwise restored to health and sold for scrap to Wilson and Company.

Plaintiffs had alleged in paragraph 4 of their petition filed July 25, 1969 "that the defendant was negligent in failing to restrain his bull from running at large in violation of section 188.2 of the 1966 Code of Iowa."

May 26, 1970, they amended their petition by adding to paragraph 4 the following: "That the defendant's breeding bull came into and trespassed upon lands where plaintiffs' bull and cows were maintained, which lands were lawfully fenced insofar as plaintiffs' portion of the partition line

fence was concerned, in violation of section 188.3 of the Iowa Code."

In paragraph 6 of their petition as amended they allege "that the aforesaid negligence of the defendant in failing to restrain his bull from running at large in violation of section 188.2 of the 1966 Code of Iowa and in the trespass of said bull upon the adjoining lands occupied by plaintiffs' cows and bull in violation of section 188.3 of the 1966 Code of Iowa, was the proximate cause of plaintiffs' damage in the sum of $9,873.86."

The statutes referred to in plaintiffs' petition as amended provide:

"188.2 Restraint of animals. All animals shall be restrained by the owners thereof from running at large."

"188.3 Trespass on lawfully fenced land. Any animal trespassing upon land, fenced as provided by law, may be distrained by the owner of such land, and held for all damages done thereon by it, unless it escaped from adjoining land in consequence of the neglect of such landowner to maintain his part of a lawful partition fence."

Evidence introduced at trial would warrant a jury in finding the following facts; The injury to the bull's testicles was caused by severe trauma, not disease; the responsibility for maintenance of the fence was divided—plaintiff assumed the south forty rods and defendant, the north forty rods; the hole was in the northern half of the fence line, the defendant's area of responsibility; the barbed wire in defendant's fence was electrified and working at the time of the incident; the ground was torn up along both sides of the fence around the hole; and no one saw the bulls fight.

In seeking reversal plaintiffs assert the trial court erred: (1) in refusing to instruct the jury plaintiffs could recover on the theory of strict liability for the trespass of livestock; (2) in giving an instruction setting forth the law of statutory partition fences without direction for its application to the facts of the case; (3) in admitting over objection a photograph depicting defendant's fence; (4) in admitting three photographs showing defendant's fence in a repaired condition; and (5) in overruling plaintiffs' motion for new trial based on accumulated errors.

Plaintiffs argue the assignments of error in three divisions. In the first division they argue those errors relating to the court's refusal and omission to give their requested instructions concerning the theory of strict liability in livestock trespass or incorporate such theory in those instructions given.

I. Plaintiffs made no complaint or objection in any error assigned that the court had not correctly summarized the issue of negligence raised by their allegation defendant failed to restrain his bull from running at large in violation of section 188.2, The Code.

This statute first appeared in its present form as section 2980, The Code, 1924. It was derived from section 2312, The Code, 1897, which provided with reference to the restraint of male animals:

"The owner of any stallion, jack, bull, boar or buck shall restrain the same, and any person may take possession of any such animal running at large in the county in which such person resides, or in which he occupies or uses real estate, * * *."

The statute was thus changed to include all animals.

Section 188.3, The Code, 1966, the other statute referred to in plaintiffs' amended petition, retained the substance of section 2313, The Code, 1897.

This court has held in certain factual situations violation of section 188.2 is prima facie evidence of negligence and not negligence as a matter of law.

Hansen v. Kemmish, 201 Iowa 1008, 1015, 208 N.W. 277, 280, 45 A.L.R. 498, dealt with the claim of a motorist for injuries resulting from a collision with defendant's boar running at large on the highway in violation of sections 2312 and 2313, The Code, 1897. Plaintiff contended defendant was required to restrain the boar at his peril. This court concluded that with respect to highway accidents the fact the animal was running at large on the highway constituted mere prima facie negligence, defendant having the right to show, if he could, that he exercised reasonable care in restraining the animal.

Ritchie v. Schaefer, 254 Iowa 1107, 120 N.W.2d 444, was an action for damages arising from a collision between plaintiffs' car and some Angus cattle which had escaped from defendant's cattle yard and strayed upon the public highway. Plaintiffs' appeal following a defendant's verdict raised one issue. The trial court instructed the jury presence of the cattle upon the highway in front of defendant's farmhouse was prima facie evidence of negligence. Plaintiffs assert this was error and the court should have instructed the jury the straying of the cattle was negligence per se. The solution rested upon an interpretation of section 188.2, The Code. In affirming the trial court, this court said: "It has been established by decisions in Iowa that a situation such as pertains in the instant case is prima facie evidence of negligence. The trial court in giving its instructions to the jury followed such precedents."

The court then continued:

"* * * The first case touching upon damages by reason of animals running at large and being struck by an automobile was Strait v. Bartholomew, 195 Iowa 377, 191 N.W. 811. Defendant had permitted a calf to run at large upon the highway. In this early case the court did not go as far as to the question of negligence as in later cases. However, the court did say: 'The defendant was bound to use ordinary care and prudence to keep and maintain a fence around the pasture in which his stock was confined, and to adopt means that were reasonably suitable to prevent the stock from getting on the highway. * * *.' The court instructed: '[I]f you find that said calf was running at large through some negligent act of commission or omission on the part of the defendant, then you would be justified in finding the defendant negligent in permitting said calf to run at large.'" Loc. cit. 254 Iowa at 1109–1110, 120 N.W.2d at 446.

The next case of this type considered in the Ritchie decision was Stewart v. Wild, 196 Iowa 678, 195 N.W. 266. In the Stewart case several hogs had strayed upon the highway. Plaintiff's car struck the hogs, overturned and plaintiff and his family were injured.

The question was raised whether the restraint of animals statute pertained to travelers on highways as well as to farmers and neighbors from whose farm animals were restrained.

In reversing the trial court for sustaining defendant's demurrer this court said:

"* * * Upon trial, it will be incumbent upon the plaintiff to prove the negligence, and it will be open to the defendant to negative the same, by affirmative as well as by negative evidence. Proof that the hogs were running at large would doubtless be presumptive evidence of defendant's breach of statutory duty, and, therefore, of negligence. What circumstances might be deemed sufficient to excuse the defendant and to render him free from fault, is a

question not involved in the demurrer." Loc. cit. 196 Iowa at 685, 195 N.W. at 269.

The question confronting the court in Ritchie v. Schaefer was whether Hansen v. Kemmish, supra, and prior similar cases should be overruled and a rule adopted holding the owner of cattle, hogs, etc., guilty of negligence per se when such animals wander upon the highways of our state. The court declined to overrule our prior cases on the basis the weight of authority in the nation definitely supports the position of Iowa in the Strait, Stewart and Hansen cases.

Klunenberg v. Rottinghaus, 256 Iowa 731, 129 N.W.2d 68, is factually different from the preceding cases as no collision between a motor vehicle and animals running at large on the highway was involved. In the cited case plaintiff was injured when she fell while helping her husband corral defendant's cattle. The cattle had strayed from defendant's field onto the highway. In attempting to drive tthe cattle from the cemetery and prevent them from going further on the highway, plaintiff ran over the top of the cemetery wall into space. She based her claim for damages against defendant on his alleged negligence in failing to restrain his cattle from running at large in violation of section 188.2, The Code.

The jury was instructed that failure to comply with the statute would constitute prima facie evidence of negligence rebuttable by reason of reasonable and ordinary care under the circumstances. The instruction was held proper. The trial court's order granting defendant judgment notwithstanding was affirmed on other grounds.

Leaders v. Dreher, 169 N.W.2d 570 (Iowa 1969), was an action for damages sustained when defendant's trespassing sow struck and injured plaintiff as he was attempting to drive the sow from plaintiff's property down a gravel lane leading to a country road.

The negligence alleged in plaintiff's petition and submitted to the jury was defendant's failure to restrain his sow from running at large in violation of section 188.2, The Code.

In referring to this statute the court said:

"In dealing with that statute we have said, proof that animals are running at large is prima facie evidence of negligence, not negligence per se, and may be rebutted by evidence of reasonable and ordinary care under the circumstances. * * * [citing authorities]." Loc. cit. 169 N.W. 2d at 573.

No cases have been called to our attention nor have we found any through independent research dealing with claims of motorists for injuries resulting from collisions with animals running at large on the highway in violation of section 188.2, The Code, which have held evidence tending to prove violation of such statute constitutes negligence per se or imposes strict liability on the owner of the trespassing animal.

In Hickey v. Freeman, 198 Iowa 465, 198 N.W. 769, plaintiff was injured by a trespassing buck sheep while returning from her chicken house to her farmhouse. She asserted her claim for damages on two theories, one based on common-law liability arising from the owner's negligence in permitting the animal to run at large and the other, on the theory there was liability under the statute for failure to restrain the animal. The court instructed on both theories in submitting the case to the jury.

In the course of the opinion, the court said, "Under these statutes [sections 2312 and 2315, The Code, 1897] we have held that the owner of certain male animals, as a bull, or in this case a buck, is liable, and

it is not necessary to show knowledge of vicious propensities or negligence."

The cases cited as support for this statement were both decided before the 1924 change making the statutory duty to restrain applicable to all animals. See Wheeler v. Woods, 205 Iowa 1240, 1243, 219 N.W. 407, 408. The same cases, Burleigh & Jackson v. Hines, 124 Iowa 199, 99 N.W. 723 and Meier v. Shrunk, 79 Iowa 17, 44 N.W. 209, along with Hickey v. Freeman are cited again in Hansen v. Kemmish, 201 Iowa at 1013, 208 N.W. at 280, as support for a similar statement.

The quoted statement from the Hickey case is in conflict with the statement of law quoted, supra, from Leaders v. Dreher, 169 N.W.2d at 573. The two statements are not in consonance even though both involve claims of persons injured on their own property by a trespassing animal. We believe the Leaders case states the correct rule. It would seem illogical that a person in order to recover for injuries suffered in an automobile collision with an animal running at large upon a public highway in violation of section 188.2, The Code, must prove negligence on the part of the owner of the animal in failing to restrain it as required by statute, whereas a person injured by a trespassing animal on the injured party's property could impose strict liability on the owner by merely showing that the animal was not restrained in violation of section 188.2. A distinction is not justified.

■ Examination of the authorities cited, as well as many others, compels the conclusion the proper rule of law in actions seeking damages for injuries to persons or their property alleged to have been proximately caused by trespassing animals dictates that proof of the owner's failure to restrain his animals in violation of section 188.2, The Code, constitutes prima facie evidence of negligence, not negligence per se, and proof of such violation does not impose strict liability on the owner. Such prima facie evidence of negligence may be rebutted by evidence the owner exercised reasonable and ordinary care in restraining his animals.

The court did not err in refusing to submit the issue of strict liability as a result of plaintiffs' pleading and proof defendant was in violation of section 188.2, The Code.

II. There remains to be considered plaintiffs' contention that by reason of their May 26, 1970 amendment set out, supra, and the evidence adduced in support thereof, a jury question was generated on the issue of strict liability.

By the common law of England, an owner of domestic animals was held strictly liable for their trespasses upon the land of others irrespective of the keeper's negligence. 2 Harper and James, Torts, section 14.9; Prosser, Torts, Fourth Ed., section 76. See also American Law Institute, Restatement, Second, Torts, Tentative Draft No. 10 (1964), section 504. It is clear however, in the early days of the United States many courts, including Iowa, rejected entirely the common-law rule of strict liability for animal trespasses, as contrary to established custom where cattle were allowed to graze at large on the range. Wagner v. Bissell, 3 Iowa 396 (1857); Herold v. Meyers, 20 Iowa 378, 382 (1866); Prosser, supra, section 76 at page 497; Harper and James, supra, section 14.9 at pages 823–824.

" * * * But as the country has become more closely settled, the tendency has been to restore the common law rule, either by statute or by decision. The matter is now very largely governed by statutory provisions. The first legislation to be adopted consisted of 'fencing out' statutes, which provided that if the plaintiff properly fenced his land there was strict liability when the animals broke through the fence,

but otherwise there was liability only when the owner was at fault. As the country became more settled the conflict between the grazing and the agricultural interests resulted in many states in 'fencing in' statutes, which required the owner of the animals to fence or otherwise restrain them, and made him strictly liable if he did not do so. * * *." Prosser, supra, section 76 at pages 497-498.

Section 188.2 may thus be properly described as a "fencing in" statute, section 188.3 as a "fencing out" statute.

■ Historically, there have grown three distinct areas of liability. A first basis of liability is negligence. Application of the negligence doctrine has classically arisen when the animal is lawfully in the place where the injury occurs. Note, Liability for Harm Caused by Livestock, 34 Iowa L.Rev. 318, 319–324. In Iowa, however, liability based on negligence may also arise in certain trespass situations. Typically, violation of the restraint statute, section 188.2, The Code, is involved and it constitutes prima facie evidence of negligence; it does not invoke strict liability. For application of this standard, see Leaders v. Dreher, 169 N.W.2d at 573; Klunenberg v. Rottinghaus, 256 Iowa at 735, 129 N.W.2d at 70; Ritchie v. Schaefer, 254 Iowa at 1113, 120 N.W.2d at 446–447; Hansen v. Kemmish, 201 Iowa at 1015, 208 N.W. at 280; Note, 34 Iowa L.Rev. at 323.

■ A second gender of liability is strict liability, the basis for recovery in common law for the trespass of animals. See also Note, 34 Iowa L.Rev. at 319. Strict liability lies in principle between liability based on negligence and absolute liability. While it may apply in the absence of fault, it becomes operative only upon the satisfaction of certain criteria in a fact situation. Grounded upon section 188.3, The Code, strict liability attaches only where the animal has trespassed upon land

enclosed by a fence as provided by law. It is in this regard that it is said, " * * * Nevertheless, since the livestock owner is not absolutely liable, he may avoid liability in some situations. It is a valid excuse, for example, if the animal has escaped through plaintiff's portion of a partition fence; it has always been held that the owner is not liable when he is driving livestock along the highway, using reasonable care to control them, and one of them wanders out of his control onto another's land; * * *." Note, 34 Iowa L.Rev. at 320. See in conjunction therewith, Mallory v. Jurgena, 250 Iowa 16, 19, 92 N.W.2d 387, 389.

■ A third basis of liability stems from situations involving wild beasts or dangerous animals, such as lions, tigers, bears, wolves, elephants and the like, and here the owner traditionally is absolutely liable for damages or injury caused by such an animal. Note, 34 Iowa L.Rev. at 319; Terpstra v. Schinkel, 235 Iowa 547, 553, 17 N.W. 2d 106, 109–110; Parsons v. Manser, 119 Iowa 88, 93 N.W. 86, 62 L.R.A. 132, 97 Am.St.Rep. 283. This category also presumably includes domestic animals which the owner knew, or should have known, to have dangerous propensities. Prosser, supra, section 76 at page 500.

Reconciling these principles with relevant statutes, an action based only on the violation of the restraint statute, section 188.2, The Code, is founded on the negligence theory alone. See Leaders v. Dreher, 169 N.W.2d at 573. An action based on section 188.3 opens the door for liability based on strict liability; the plaintiff need not show defendant's conduct amounted to negligence. Mallory v. Jurgena, supra. Owners of dangerous animals or domestic animals with dangerous propensities, actually or constructively known, presumably may be found absolutely liable. With the exception of animals dangerous in fact, these principles were generally gathered in capsule form

in Coakley v. Dairy Cattle Congress, 228 Iowa 1130, 1135, 293 N.W. 457, 459:

" * * * In the case of domestic animals, the rule is thus stated in 3 C.J.S. Animals § 145: 'The owner or keeper of domestic animals is liable for injuries inflicted by them only where [1] he has been negligent, [2] the animals were wrongfully in the place where they inflicted the injuries, or [3] the injuries are the result of known vicious tendencies or propensities.' * * *."

Sections 188.2 and 188.3 of The Code do not specifically alert the reader that liability arising from violations thereof is based on negligence and strict liability, respectively. Only by reading past decisions of the court incorporating the statutes does one find the distinction. The question is whether plaintiffs perceived the difference in theories and so proceeded as to perfect their claims thereon.

As pointed out, plaintiffs originally set forth in their petition the one ground of negligence based upon violation of section 188.2. In its amended form, paragraphs 4 and 6 of the petition add the allegations based on violation of section 188.3. Rule 79, Rules of Civil Procedure, provides:

"Numbered Division and Paragraphs. Each separate cause of action or defense must be stated in a separately numbered division. Every pleading shall be separated into numbered paragraphs, each of which shall contain, as nearly as may be, a distinct statement."

Plaintiffs wholly disregard requirements of this rule as they maintain the fact alleged in the petition as amended five days before commencement of trial sufficiently asserted alternate theories of liability against defendant—negligence in failing to restrain his animal in violation of section 188.2 and strict liability put upon him by section 188.3—to require submission of both

issues to the jury when considered in the light of proof tending to support them.

They advanced this argument in the face of the allegations in paragraph 6 as amended that defendant's negligence in the two respects asserted in paragraph 4 as amended was a proximate cause of their damages.

Since plaintiffs do not contend the question of strict liability under section 188.3 was an issue tried by consent of the parties even though not pleaded, they are limited with respect to the submissibility of the issue of strict liability to the allegation defendant was negligent in failing to restrain his bull from trespassing upon plaintiffs' land in violation of section 188.3. The fact the petition was amended is not persuasive that plaintiffs intended to proceed along two theories of liability; it only demonstrates their awareness of recovery possibilities under both sections 188.2 and 188.3.

■ This court has repeatedly held the trial court must submit only those issues raised by both pleadings and proof. Adams v. Deur, 173 N.W.2d 100, 113 (Iowa 1969); Dopheide v. Schoeppner, 163 N.W.2d 360, 364 (Iowa 1968) and authorities cited.

■ On the other hand, this court has said that in the absence of specific objection, the pleader is accorded the advantage of every reasonable intendment, even to implications necessarily inferred. Coleman v. Hall, 161 N.W.2d 329, 332 (Iowa 1968); Board of Education v. Board of Education, 260 Iowa 840, 844, 151 N.W.2d 465, 467; Reed v. Harvey, 253 Iowa 10, 13, 110 N.W. 2d 442, 443–444. Confusing as the pleadings were, defendant requested no specific statement to clarify plaintiffs' theory of recovery (although defendant need not plan plaintiffs' case).

Along this same line we have said:

"Much has been written regarding construction of pleadings when attacked by a

motion to dismiss. Our earlier cases create some uncertainty as to the applicable rules. However, it is now well settled that where a doubtful pleading is attacked by motion before answer [it] will be resolved against the pleader. This rule is qualified by the additional provision that if the petition does allege ultimate facts upon which plaintiff might recover and states a claim under which evidence may be introduced in support thereof, the petition should be construed in the light most favorable to the plaintiff with doubts resolved in his favor and the allegations accepted as true. Bigelow v. Williams (Iowa), 193 N.W.2d 521, 523, 524; Wolfswinkel v. Gesink (Iowa), 180 N.W.2d 452, 457; Nelson v. Wolfgram (Iowa), 173 N.W.2d 571, 573, and citations." Bindel v. Iowa Manufacturing Company of Cedar Rapids, Iowa, 197 N.W.2d 552 (filed May 11, 1972).

Defendant contends in support of the judgment plaintiffs' claims in their amended petition are still cast in negligence as they failed to plead a theory of strict liability as a basis of recovery separate from their basic negligence claim. Thus, plaintiffs were not entitled to their proposed additional instructions since they were not within the pleaded issues.

■ Even though plaintiffs failed to precisely plead a theory of strict liability, the fact they alleged violation of section 188.3 by amendment to the original cause compels the conclusion that in the light of the statements of law set out, supra, plaintiffs' petition sufficiently asserted a theory of strict liability that entitled them to have their cause submitted to the jury on such theory if supported by substantial evidence.

III. Since the trial court did not indicate wherein plaintiffs failed—whether in pleading or proof—sufficiency of the evidence to support plaintiffs' theory of strict liability must be examined.

Defendant argues that apart from plaintiffs' failure to allege any claim other than negligence, the evidence was wholly insufficient to justify submission of the theory of strict liability as proposed in plaintiffs' requested instructions.

He maintains that one may not recover on a theory of absolute liability for trespass under section 188.3, The Code, unless their lands are fenced as provided by law; this required plaintiffs to show as a prerequisite to recovery that their portion of the division fence was lawful under section 113.18, The Code. Defendant insists plaintiffs, by reason of their allegations in paragraph 4 as amended, had assumed the burden of establishing as an essential element of their claims that their land was "fenced as provided by law" and that the partition fence was lawfully established as such. Having failed to sustain this burden plaintiffs can recover only if defendant's negligence is established.

Plaintiffs assert the evidence introduced at trial, sufficient to warrant submission of the negligence issue, was likewise sufficient to justify submission of the strict liability theory since neither the evidence to be presented supporting, nor the defendant's defense against, livestock trespass with strict liability in any way differed from that which it would have under the negligence theory. Plaintiffs urge in any event they were not required to show their portion of the partition fence was lawful since the evidence established defendant's bull entered plaintiffs' pasture through defendant's portion of the fence.

Defendant questions the validity of plaintiffs' second argument since the issue surrounding sufficiency of plaintiffs' fence is not one of proximate cause; it is a matter of showing that statutory conditions have been met. In the absence of such showing, a specific statutory remedy is not available.

As we construe Code section 188.3 set out, supra, liability under this statute is explicitly predicated on a showing the animal had trespassed "upon land, fenced as provided by law". It cannot be logically argued otherwise.

The record supports the conclusion both parties so considered the statute in the pleading and trial stages.

Plaintiffs had alleged in paragraph 4 of their amended petition that defendant's bull trespassed upon lands which were lawfully fenced insofar as plaintiffs' portion of the partition fence was concerned. However, the only reference to the fence in their main case was limited to Duane Wenndt's identification of plaintiffs' exhibit 4 and to a comparison of their woven wire with defendant's woven wire.

In motion to withdraw allegations of plaintiffs' amendment made at the close of plaintiffs' evidence, defendant asserted there was no evidence to sustain this allegation.

Nevertheless, plaintiffs continue to argue in their reply brief it was not their burden to show their portion of the partition fence was a lawful fence. We quote from that argument:

"* * * It is plaintiffs-appellants' position that under the facts of this case, the plaintiffs' fence is irrelevant; that defendant's bull and cattle were never exposed to any portion of the fence which plaintiffs by mutual oral agreement, acquiesced in by all parties, was obligated to maintain. Further, the irrelevancy of plaintiffs' fence is additionally pointed up by defendant's admission and the undisputed evidence that defendant's bull broke through the defendant's fence to enter plaintiffs' pasture."

We cannot agree with the theory of this argument in view of our construction of section 188.3. It was incumbent on plaintiffs to establish the animal trespassed upon land which was lawfully fenced insofar as their portion of the partition fence was concerned. Section 113.18, The Code, specifies three types of "lawful" fences—rail, board and barbed wire. Note, Iowa Agricultural Fencing Law, 34 Iowa L.Rev. 330, 332.

Evidence introduced by defendant relating to condition of his portion of the fence did not aid plaintiffs in establishing the prerequisite to recovery under their theory of strict liability.

Under the record before us the trial court was correct in refusing to submit the question of strict liability under section 188.-3 of The Code. Plaintiffs' assignments cannot be sustained since they failed to establish facts necessary to afford them a right of recovery under the theory of strict liability.

IV. In the second division of their brief and argument plaintiffs contend the court erred in giving instruction 6 relating to statutory fences without direction for its application to the facts of the case.

In submitting the case on the theory of negligence, the court told the jury in instruction 5 defendant was entitled to show, if he could, that he exercised reasonable care and prudence in restraining his animal. They were further instructed in determining that issue they might take into consideration what measures, if any, defendant took to prevent the animal's escape, including whether defendant had a statutory partition fence. In the following instruction they were given the law on partition fences. Plaintiffs' assignment is without merit.

V. In another division plaintiffs argue their fifth and sixth assignments in which they contend the trial court erred in admitting photographs of defendant's portion of the division fence.

The question of admissibility of photographs under similar circumstances is considered at some length in Elkin v. Johnson, 260 Iowa 46, 50–51, 148 N.W.2d 442, 445–446. We will not repeat what is said there. As in the Elkin case, we find no merit in plaintiffs' assignments of error relating to the admissibility of the photographs.

VI. In view of what we have said in the preceding divisions, plaintiffs' remaining assignment is without merit.

The case is therefore—Affirmed.

MOORE, C. J., and RAWLINGS and LeGRAND, JJ., concur.

UHLENHOPP and REYNOLDSON, JJ., dissent.

REES, HARRIS and McCORMICK, JJ., takes no part.

UHLENHOPP, Justice (dissenting from division III and result).

How do §§ 188.2 and 188.3 of the Code affect the civil liability of the owner of an animal?

Those sections in various forms were in our Codes down to §§ 2312 and 2313 of the Code of 1897. They were changed somewhat as §§ 2980 and 2981 of the Code of 1924, and thereafter they remained the same except for their numbers. Section 188.2 provides:

All animals shall be restrained by the owners thereof from running at large.

And § 188.3 provides:

Any animal trespassing upon land, fenced as provided by law, may be distrained by the owner of such land, and held for all damages done thereon by it, unless it escaped from adjoining land in consequence of the neglect of such landowner to maintain his part of a lawful partition fence.

(Section 188.8 supplements § 188.3 by granting the owner of the land the alternative of suing the owner of the trespassing animal for damages instead of distraining the animal.)

Section 188.2 creates a *duty* to restrain animals but does not expressly create civil *liability* for violating that duty. In contrast, § 188.3 (and § 188.8) creates civil *liability* for trespassing animals but does not in words spell out a *duty*—except for the inference arising from the word "trespassing."

What effects do these sections have as to civil liability? The sections may be considered in reverse order.

When a statute expressly or by implication imposes *liability* for acts, the statute itself creates liability and a plaintiff need only show a violation of the statute and his damages as a result. As stated in Restatement, Torts 2d § 285, Comment *b*:

In any or all of these respects the standard of conduct may be defined and established by a legislative enactment which lays down requirements of conduct, and provides expressly or by implication that a violation shall entail civil liability in tort. In such case the only questions that can arise as to the effect of the statute are as to its constitutionality and construction.

And in § 286, Comment *c*:

A legislative enactment or an administrative regulation may provide in specific terms or by necessary implication that a violation shall entail civil liability. In such case, if the legislation or regulation is valid and applicable to the facts of the case, the court must apply it.

On the other hand, if a statute itself does not expressly or impliedly impose liability, it may still establish a *standard* whose violation may be evidence of negligence or negligence per se. In such event, while liability is not created by the statute, it may arise at common law by virtue of the negligence doctrine. As stated in 65 C.J.S. Negligence § 19(1) at 615–618:

> The legislature may, by statute, extend common-law duties . . . and violation of such a statutory duty may give rise to a cause of action on behalf of a person who is injured by reason thereof.
>
> . . .
>
> Such liability will necessarily exist where it is expressly imposed by statute for violation of its provisions. Liability may also exist, however, where the statute does not in terms impose any civil liability for violation of its provisions, or although the enactment is penal in its character; in such event, however, no statutory action will lie, but the remedy is found in a common-law action for negligence, consisting in a breach of a statutory duty. . . .

See also 57 Am.Jur.2d Negligence §§ 234–236 at 615–620 (putting the matter in terms of *liability* per se as distinguished from *negligence* per se); Restatement, Torts 2d § 288B (when violation is evidence of negligence and when it is negligence per se).

Section 188.3 is a *statute of the former type.* The section expressly imposes liability for trespassing animals, enforceable by distraint under § 188.3 itself or by action under § 188.8. All that a plaintiff need show is that the defendant's animal trespassed on land fenced as provided by law and the damages as a result. On the other hand, § 188.2 is clearly of the latter type. The section itself does not impose liability, but establishes a standard whose violation this court holds to be prima facie evidence of negligence in common-law actions for negligence. Leaders v. Dreher, 169 N.W.

2d 570 (Iowa); Hansen v. Kemmish, 201 Iowa 1008, 208 N.W. 277.

In the present case, plaintiffs Wenndt pleaded both sections, but the trial court submitted to the jury only liability predicated on negligence—§ 188.2. The Wenndts excepted to the trial court's failure to submit the issue of liability predicated on trespass—§ 188.3.

The question is whether the evidence is sufficient to bring the Wenndts under § 188.3, more specifically, whether the jury could reasonably find this land is "fenced as provided by law." The fence involved is the partition fence between the parties' pastures.

Our fencing statute is chapter 113 of the Code. Two kinds of fences are described: a "lawful" fence and a "tight" fence. §§ 113.18, 113.20. The principal difference is that a tight fence normally has woven wire at the bottom, so as to turn hogs and sheep. Nothing in § 188.3 indicates that a tight fence is required to make that section applicable, as distinguished from a lawful fence.

The evidence demonstrates, however, that the partition fence here was more than simply a lawful fence; it was a tight fence. The Wenndts had approximately 40 rods on the south and defendant Latare had approximately 40 rods on the north. The Wenndts' end had woven wire at the bottom and three strands of barbed wire at the top. Latare's end had woven wire at the bottom (a little lower than the Wenndts' woven wire) and four strands of barbed wire at the top. The posts were less than a rod apart and were well set and solid. The wire was tightly fastened to them. Exhibits A, B, C, D, and E are large photographs of the fence, and from the testimony and these exhibits the jury could reasonably find that this land was fenced as provided by law. Latare's bull went through Latare's own end of the fence. That end is shown on the accompanying Exhibit B, extending to the right from the double posts.

[A6376]

Latare contends that the land was not fenced as provided by law because the top wire of the fence did not come up to the full 48 inches § 113.18 requires. The fence was built several years ago, and at the time of the occurrence the top barbed wire at

its lowest point was 40½ inches high and at the highest point was 47½ inches above ground. Assuming that § 113.18 requires a 48-inch fence, nevertheless Latare's contention does not appear well founded. Land may be fenced as provided by law within the purview of § 188.3 although at times the fence may not be in perfect compliance with § 113.18 or in perfect repair. See Noble v. Chase, 60 Iowa 261, 14 N.W. 299. Indeed, in the ordinary case the animals escape because the fence is not properly kept up; if fences were always in perfect compliance and repair, § 188.3 would seldom be needed. Moreover, the exception clause in § 188.3—that a landowner may not proceed under that section if the animal came onto his land in consequence of his own neglect to maintain his part of the fence—shows that § 188.3 contemplates land may be "fenced as provided by law" although the fence is not in complete compliance or repair at a given time or place. Otherwise that exception would not be needed.

Again, § 188.5, stating when animals may *not* be distrained, infers that land may be fenced as provided by law although the fence is not in perfect compliance or repair. Iowa was once open prairie and livestock roamed at large. The fencing statute was enacted, and any landowner could come under that law by requiring his adjoining owner to join in the erection of a partition fence, to be apportioned by agreement or by the township trustees. §§ 113.1, 113.3. Thus Iowa had unfenced land and land which was fenced under the fencing law. Today, of course, little land is unfenced.

Section 188.5 is the antipode of § 188.3 and deals with land which is unfenced. Section 188.5 is entitled, "Trespass on *unfenced* land." (Italics added.) It provides:

If there be no lawful partition fence, and the line thereof has not been assigned either by the fence viewers or by agreement of the parties, any animal trespassing across such partition line shall not be distrained, nor shall there be any liability therefor.

As the fencing law permits, these neighbors by agreement apportioned the line between them and erected a partition fence several years ago. The jury could find the case falls within § 188.3 rather than § 188.5. A real question actually exists as to whether a jury could reasonably find that this land was *not* fenced as provided by law. The substantial partition fence which in fact existed no doubt accounts for the jury's verdict for Latare on the negligence issue under § 188.2—and for the Wenndts' insistence that trespass should also have been submitted under § 188.3.

In connection with the matter of the height of the fence, had the bull gone over the Wenndts' end of the fence because it was too low, we would have a different case. But he went through the fence, and at Latare's end.

The Wenndts' claim predicated on trespass under § 188.3 should have been submitted to the jury. The judgment should be reversed for trial on that claim.

REYNOLDSON, J., joins in this dissent.